ANGLO-AMERICAN MILL CO., A CORPORATION, APPELLANT, v. TWIN CITY MERCANTILE & MANUFACTURING COMPANY, A CORPORATION, RESPONDENT.*—35 S. W. (2d) 982.

In the Springfield Court of Appeals. Opinion filed February 23, 1931.

*Dearmont & Russell* for appellant.

*Homer F. Williams* and *Davis & Damron,* for respondent.

SMITH, J.—This suit was instituted in the circuit court of Bollinger county on the 19th day of May, 1928, by the plaintiff to recover the balance claimed to be due on an open account. The balance claimed to be due as set out in the petition was $300.50 but the plaintiff admitted in the course of the trial that there was an error of $6.75 in the account and that the plaintiff was only entitled to a judgment of $293.75.

The defendant admitted the account was correct to the extent of $293.75, but defended against the account on the ground that the plaintiff had sold to the defendant certain machinery on a warranty, and that the machinery did not comply with the warranty, and in its counterclaim asked for judgment against the plaintiff for $296.17 paid to the plaintiff on the machinery and also for $26.25 paid by the defendant for freight charges on said machinery.

The reply was a general denial. There is no controversy over the pleadings, so we do not set them out here.

The case was tried before the court without a jury, and at the close of all the testimony the plaintiff asked for the following instruction, which was refused: ''Now, at the close of all the testimony, the court declares the law to be that the plaintiff is entitled to recover $293.75 with interest thereon from October 28, 1927, at six per cent, or a total sum of $328.'' This was the only instruction requested by either side, and none was given.

The court took the case under advisement from the 11th day of September, 1929, to the 12th day of March, 1930, when he entered judgment for the defendant on plaintiff's petition, and rendered judgment against the plaintiff and in favor of the defendant on its counterclaim in the sum of $296.17. Proper steps were taken for

appeal by the plaintiff and the case is here for consideration under the following assignments of error as set out in plaintiff's brief:

"1. The court erred in refusing plaintiff's peremptory instruction offered at the close of all the testimony.

"2. The court erred in admitting in evidence what purported to be a carbon copy of a letter claimed to have been written by the respondent to the appellant on September 8, 1927, over the objection of the appellant.

"3. The court erred in rendering a judgment against the plaintiff on the defendant's counterclaim, when the undisputed testimony showed that the defendant never attempted to comply with the conditions of the warranty under which it bought and used the mill from the date of its installation until the date of trial, which was more than two years after the purchase."

There is no controversy over the amount and price of machinery and accessories shipped by the plaintiff to the defendant. On the 15th day of March 1927, the plaintiff sold to the defendant one No. 1 Miracle Ace Hammer Mill, complete with fan feed collector and certain other items described in a written contract, which contract was offered in evidence. The price of the mill was $510, the accessories described on the back of the contract amounted to $70.84. On the date the contract was signed defendant paid the plaintiff $58. When the machinery reached its destination in Lutesville the defendant paid a sight draft amounting to $232.42.

The controversy grows out of a breach of the contract, as the defendant claims. The part of the contract involved is as follows:

"Guarantee: Seller guarantees that the above machinery is made throughout of the best material and in a thorough and workmanlike manner, and the seller will replace any part free of charge that may within one year from date of this contract prove defective either in material or workmanship. Machines and accessories covered by this contract but not manufactured by the seller shall be under the guarantee of the respective makers only.

"The Anglo-American Mill Company guarantees the buyer complete satisfaction, and will leave it entirely with said buyer to say whether said machinery fulfills all descriptions, guarantees and his expectations.

"Buyer shall have 15 days free trial of machinery to decide whether or not same is entirely satisfactory, the period to run at the option of the seller either from the date of starting the machinery in operation, or from a date four weeks after arrival of machinery at the railway station, of the place designated as the point to which shipment shall be made. The machinery must prove entirely satisfactory to buyer and fully equal all guarantees and expectations; and in case it does not, the buyer shall dismantle same,

carefully clean and rebox it in the same condition as when received (ordinary wear and tear excepted) and return to seller free on board cars at station where buyer received same. When the machinery is so returned as above directed, and billed to any point designated by seller, and is received at the said point and upon immediate examination is shown to be in good condition (ordinary wear and tear excepted) the seller will without question, immediately refund all money and the note paid to seller for said machinery. The return of the machinery as above and the payment to buyer of all the money and note paid to seller shall cancel and make null and void this contract, and anything arising out of same, and cancels any and all liability whatsoever of either party to the other party.

"Failure of the buyer to give the seller notice of rejection and return of said machinery within the 15 days mentioned, and to make actual and full delivery at the railroad station where received within seven days after such notice, is to be considered conclusive evidence of the fulfillment of all guarantees, and an acceptance by the buyer of the machinery herein specified, and a waiver of all claims for damages arising out of this contract.

"It is agreed that the title to said machinery shall not pass to buyer or any other person, firm or corporation until paid for in full in cash, also that no matter in what manner such property shall become attached to real estate it shall not become a fixture or a part of said real estate. If there be any default in payment of any installments as herein provided, or other conditions herein expressed, all subsequent installments shall, if seller so elects, become due and payable forthwith.

"The buyer agrees to have this machinery insured against loss of fire in a reliable insurance company, promptly on arrival, for an amount sufficient to cover debt owing seller and have attached a loss clause in favor of the Anglo-American Mill Company, as its interest may appear, also to send the policy to the seller should the Anglo-American Mill Company fail to receive such policy within ten days after arrival at the buyer's station it has the privilege of taking out such a policy, and the buyer agrees and promises to pay the premium of said policy promptly on receipt of statement.

"This contract covers all agreements concerning this transaction of every nature and no representations made by a representative or any other person not included herein shall be binding."

On the margin of the front of the contract in typewriting appear these words, "Note, customer wants to build building around machine therefore trial period will be delayed for a month or more. Due notice of starting will be given, cash discount will be allowed on remitting second half at end of trial period."

This contract was signed by both parties, and accepted by the plaintiff on March 18, 1927.

The defendant contends that the machinery did not fulfill all descriptions, guarantees and expectations, and that the defendant so notified the plaintiff, and notified it that it was ready to return the machinery to any point designated by the plaintiff, and that the plaintiff failed to advise the defendant where it wanted the machinery sent and that it could not ship the machinery until so advised by the plaintiff.

The plaintiff claims that the defendant did not comply with the terms of the contract, by properly notifying the plaintiff of any defect, if any, there was in the machinery, and did not comply with the contract in dismantling the machinery and recleaning and reboxing the same, and did not return to the seller free on board cars at station where received, but retained the machinery, and used it at intervals up to within a short time before the date of the trial, and that because the defendant failed to give the notice of rejection and failed to make actual and full delivery to the railroad station where received, it should be considered conclusive evidence of the fulfillment of all guarantees and an acceptance by the defendant and a waiver of all claims for damages arising out of the contract.

The testimony shows that the machinery arrived and was set up in the defendant's mill and was tried out on August 26, 1927, and on August 27, the defendant wrote the plaintiff the following letter:

"Gentlemen:

"We gave our Hammer Mill a try out yesterday and was some what disappointed in its performance.

"1st. It will not reduce wheat, oats nor corn bran to a 'flour mass' as it is represented to do.

"2nd. The blower will not handle the ground feed at anything near the rated capacity of our mill.

"With a finer screen we may be able to reduce the corn bran wheat, oats, etc. to the desired 'flour mass' but if not we do not need the hammer mill at all. So if you have any finer screen than the $\frac{5}{32}$ please send us one via. P.P. at once, that is if you think this will enable us to handle the above named feed as desired.

"CFH:CS                                "Yours truly,
                              "Twin City M. M. Co."

The evidence shows that the defendant received some other screens from the plaintiff and gave the machinery another tryout about the 6th or 7th of September 1927, and the witness G. Frank Hopkins, president of the defendant company, and who had written the letter of August 27, testified that he had written a letter to the plaintiff on September 8, 1927, and produced a carbon copy of the letter which he said he had written to the plaintiff. The record shows the following with reference to this letter:

"Mr. Schreiner can likely give you more information about how the machines worked, because he was the man that handled the machinery. I wrote to them for shipping instructions for the mill."

Mr. Russell objected and moved that the statement that he sent for shipping instructions be stricken out as a conclusion; motion overruled.

I wrote this letter September 8th.

Mr. Russell made a formal objection to this letter, as only a carbon copy of the letter could be produced and no notice had been given plaintiff to produce the original before the commencement of this trial; the court asked for the original; plaintiff did not have original, and it had never been seen by Mr. Russell; the court overruled the objection.

The letter is as follows:

"Sept. 8, 1927.

"Anglo-American Mill Company,
  "Owensboro, Ky.
"Gentlemen:

"The screens shipped us under date of 1st inst. were given a try out yesterday, but to our sincere regret we are still unable to get the desired results from the mill. So we will have to return the mill; we therefore await your shipping instructions.

"Yours truly,
"TWIN CITY M. & M. Co.,
......·.................Pres."

It is to the court's action in admitting the above carbon copy of the letter that the second assignment of error is directed. Neither the plaintiff nor defendant furnish us with any authorities under this assignment, but in its brief the plaintiff used this language:

"Defendants letter, or the carbon copy of it, dated September 8 in which it says it awaits shipping instructions does not meet the requirements of the conditional warranty under which the machinery was sold. There is nothing in the evidence to show that the letter was ever addressed to the plaintiff. Mr. Hopkins says he wrote such a letter and mailed it, but he does not say to whom he mailed it. The general rule is that when a carbon copy of a letter is offered in evidence the party offering the same must produce proof that he wrote the original inclosed in an envelope, addressed to the person named, and deposited it in the United States mail. Be that as it may the defendant, before it can defeat plaintiff's claim for the balance due on the account, must show that it had complied with the terms of the contract upon its part or pleaded and proved that the plaintiff had waived the conditions required of the defendant. No waiver was pleaded, and certainly no waiver was proven, because Mr. Hopkins himself says that he received no reply to the letter he wrote asking for shipping instruction."

We think it was not error to admit the carbon copy of the letter, for ordinarily a carbon copy of a letter may be regarded as an original and admitted in evidence as such. [Krogain v. Blake, 239 S. W. 495, 501.] It is especially true in this case that no error was committed in admitting the letter, since the testimony later introduced shows that the plaintiff was not surprised or unprepared to meet the letter, for when the plaintiff was putting in its rebuttal testimony it introduced a letter dated February 21, 1928, from the defendant, one paragraph of which is as follows: ''You were notified of these facts in two letters within a tryout period, namely August 27th and Sept. 8, 1927 and in the latter we asked you for shipping instructions for the return of the mill.''

The testimony in this case does not fully bear out the contention made in plaintiff's third assignment of error, that ''the undisputed testimony showed that the defendant never attempted to comply with the conditions of the warranty under which it bought and used the mill, etc.''

The contract introduced in evidence warranted the machinery to be made throughout of the best material and made in a thorough and workmanlike manner and ''guarantees the buyer complete satisfaction, and will leave it to the buyer to say whether said machinery fulfills all descriptions, guarantees and his expectations—— The machinery must prove entirely satisfactory to buyer and fully equal all guarantees and expectations.'' The contract gave fifteen days' free trial of the machinery to decide whether or not the same was entirely satisfactory. After the machinery was tried the first day the defendant in its letter of August 27, heretofore set out, advised the plaintiff of the disappointment in the performance of the machinery, and designated wherein it was not coming up to expectations. The letter of September 8, set out above complains that the machinery was not satisfactory and asked for shipping instructions. Other letters were offered in evidence by the plaintiff and these letters showed that the defendant was complaining of the unsatisfactory condition of the machinery. These letters were introduced by plaintiff to show that defendant continued to use the machinery, but they also showed the machinery was not satisfactory. Witnesses were on the stand to show that the machinery was not satisfactory to the defendant. In fact, we think the testimony as to the deficiency of the machinery and as to the notice of that fact, was sufficient to make that a question of fact for the trial court, and if that were all here, the case could easily be determined. But this contract provided that the defendant had some duties to perform in case the machinery was not satisfactory before having its money returned and before being released from its obligation to pay. This contract provided that in case the machinery does not prove entirely satisfactory to the buyer, the buyer shall do certain definite things

before it may have its money refunded. First, the buyer shall dismantle the same, second, carefully clean, and rebox it, third, return to seller on board cars at station where buyer received same. Fourth, when so returned as above directed it must be billed to any place designated by seller.

It is admitted in the evidence that the machinery was not returned to the cars and was not billed to any point, but could the plaintiff hold the defendant to a strict compliance with this part of the contract, when it had failed to designate where the machinery should be billed to after receiving notice of its deficiency and a request for shipping instructions? We think not. Certainly the plaintiff had contracted with the defendant that it would designate where the machinery could be billed to and shipped, if it was not satisfactory. It did not do that and the plaintiff could not hold the defendant liable for not complying with that part of the agreement, because a reasonable construction of this contract would be that the defendant should know where the machinery was to be billed and shipped before delivering it on the car at the station. But the defendant was compelled under the contract, as well as a matter of natural consequence, to do something before it could have been delivered to the station. Naturally it must quit using the machinery. By contract it must dismantle it, clean and rebox it. Did it do these? It did not quit using it. The testimony is conclusive that it used the machinery practically each week up to the time of the trial which was about two years after it was bought. It was never dismantled and never reboxed ready for shipment.

The failure to designate where the plaintiff wanted the machinery shipped would relieve the defendant from billing out the machinery, and we are inclined to think it would relieve the defendant from delivering to the station, but we can think of no reason where failing to give shipping instructions would authorize the defendant to continue to use the machinery for two years, or until the trial, and then be relieved from paying for the same. If the defendant had dismantled the machinery, cleaned it and reboxed it as provided by the contract, when it proved unsatisfactory, if it in fact was unsatisfactory, and had set the machinery aside awaiting shipping orders, it would have been in an entirely different position here. But it concedes failure to do these things. It admits using the machinery up to within a short time before the trial. It seems certain that the defendant could not so retain and use the plaintiff's property under such circumstances and then be relieved from paying anything for it. [Nicholas Shepherd Co. v. Rhoadman, 112 Mo. App. 299, 87 S. W. 62; The Brooks Tire Machine Co. v. Wills, 182 Mo. App. 50, 167 S. W. 604; Gaar-Scott & Co. v. Nelson, 166 Mo. App. 51, 65, 148 S. W. 417; Yerxa, Andrews & Thurston v. Macarone

Co., 315 Mo. 927, 963, 288 S. W. 37; Columbia Weighing Co. v. Young, 222 Mo. App. 144, 4 S. W. (2d) 830.]

This record conclusively shows that the defendant kept and used the machinery and by so doing the defendant's own evidence shows that the machinery was not entirely worthless, but was worth something to defendant, therefore the defendant was not entitled to an absolute release of its liability, but was at most only entitled to the difference between the purchase price and the machinery value as shown actually to be. This will have to be remanded for another trial in keeping with suggestions above.

The trial court did not err in refusing the plaintiff's peremptory instruction.

The judgment should be reversed and the cause remanded for another trial. It is so ordered. *Cox, P. J.,* and *Bailey J.,* concur.