**GRAND RIVER TP., DE KALB COUNTY,**

v.

**COOKE SALES & SERVICE, Inc.**

No. 43923.

Supreme Court of Missouri.

Division No. 1.

April 12, 1954.

Nolan M. Chapman; Don Chapman, Nolan M. Chapman, Jr., Chillicothe, for appellant.

Beavers Law Firm, Grant City, J. B. Beavers, Cameron, Robison & Miller, Maysville, for respondent.

HYDE, Presiding Judge.

█ Plaintiff had verdict and judgment for $2,213.60, paid by it to defendant on a contract of sale of a used motor road grader, submitted on the theory of rescission of the contract. Defendant has appealed. We have jurisdiction because plaintiff is a political subdivision of the State. Section 3, Art. 5, 1945 Const. V.A.M.S.; Harrison and Mercer County Drainage District v. Trail Creek Tp., 317 Mo. 933, 297 S.W. 1.

█ Defendant contends the petition did not state a claim upon which relief could be granted and that on the evidence it was entitled to a directed verdict. The complaint against the petition is that it commingled in one count two inconsistent causes of action, one for breach of warranty and one for rescission. Defendant raised this point both by motion to dismiss and by motion to elect. While it appears that the motion to elect should have been sustained, this error was harmless because only evidence on rescission was admitted and because at the close of the evidence plaintiff did elect by announcing that "it is the intention of the plaintiff to ask instructions only on rescission of the contract and not on breach of warranty;" and that was the way the case was submitted. White v. St. Louis & Meramec Railroad Co., 202 Mo. 539, 101 S.W. 14; Pinnell v. St. Louis, A. & T. Ry. Co., 49 Mo.App. 170; 71 C.J.S., Pleading, § 491, p. 1005. Therefore, this assignment is overruled.

Defendant also contends both as to the petition and as to the evidence that no claim was stated and no case was made against defendant because the contract was void for two reasons.

First: because the contract was signed by the three members of the township board individually and because the evidence showed that it was signed by the members of the board in the public road, when the machine was delivered, and failed to show that this was done in a meeting of the board duly assembled at the office of the township clerk in accordance with Section 65.300 or that a record was made of the contract by

the clerk in accordance with Section 65.420. (Statutory references are to RSMo and V.A.M.S.)

Second: because the contract shows on its face that it is an effort to anticipate the income and revenues of Grand River Township for the years 1952 and 1953 following the year the contract became effective, and thereby created a debt within the meaning of Section 26(a) of Article VI of the Constitution and, therefore, is illegal and void.

Defendant further contends that no case on rescission was made because plaintiff did not offer to return the machine until months after its defects were discovered and after the first payment of March 1, 1952 was made; and claims that, as a matter of law, the tender was not made in a reasonable time, citing Brandtjen and Kluge, Inc. v. Burd & Fletcher Co., 239 Mo.App. 268, 192 S.W.2d 651; Pfeiffer v. Independent Plumbing & Heating Supply Co., Mo.App., 72 S.W.2d 138; Aeolian Co. of Missouri v. Boyd, Mo.App., 65 S.W.2d 111; Harper v. Wilson, Mo.App., 191 S.W. 1024; Bush v. Norman, Mo.App., 199 S.W. 721; Manley v. Crescent Novelty Mfg. Co., 103 Mo.App. 135, 77 S.W. 489; Anglo-American Mill Co. v. Twin City Mercantile & Mfg. Co., 225 Mo.App. 329, 35 S.W.2d 982, and Phelps Mfg. Co. v. Burgert, Mo. App., 115 S.W.2d 107. Plaintiff says this is a jury question in this case because after discovery of the defects, defendant either attempted to make the necessary repairs or promised to do something about it thus causing plaintiff to be lulled into a false sense of security.

The following facts were shown by plaintiff's evidence. The purchase order made a 60 day guarantee. The order was dated June 27, 1951 and the machine broke down early in July and defendant sent men out to fix it. The trouble then was that the clutch went out. About three weeks later, it broke down a second time; this time it was a valve and piston. Defendant's men again came out and repaired it. About two weeks later, it broke down a third time. This was reported to defendant but it did not make repairs and they were finally made at Lathrop. In September or October, the machine broke down a fourth time. During that fall, the township trustee made two trips to Chillicothe to talk to defendant about the machine, and defendant's men said: "We will try to look after it and help you out on it." They never did anything but wanted to trade plaintiff another machine. Plaintiff's own men repaired the machine but it broke down a fifth time. Finally, on April 1, 1952, plaintiff quit trying to use the machine, parked it, and has not used it since. The first notice of rescission, offer to return the machine and demand for the amount paid, was made in August 1952. Plaintiff's first operator worked with the machine from June 27, 1951 until August 15, 1951. He said he operated it about 15 days during that time. He said the first day the governor would not work and would not pull the blade down like it should. He also said the gear box spindle bolts were worn, the brakes were no good, and it leaked oil so that it was necessary to stop about every two hours to put in more oil. He also said the whole machine was worn out, that the motor was too small and that it could not do proper grading and ditching. The operator who took his place said between August 15, 1951 and April 1, 1952, when the use of the machine ended, he worked 603 hours with the machine and that 253 hours of this total was working on repairs. He said "the clutch kept going out on it"; that "a valve kept burning off on it"; and "the oiling solution that worked the hydraulic system kept leaking on us." Plaintiff also had evidence that the value of the machine purchased, and the value of the tractor traded in, was each $500 and that it would have been an even trade to trade one for the other. Defendant offered no evidence.

In some of the cases cited by defendant there was no tender at all of the property purchased. In the Brandtjen and Kluge case, supra, it was held the right of rescission was waived by continued use of a machine for more than two years after tender and attempt to rescind. In the Aeolian Co. case, supra, 65 S.W.2d, loc. cit. 113, a four months delay was held not unreasonable as

a matter of law when "plaintiff was continually attempting to put the piano in condition until * * * very shortly before defendant's rescission was expressed." This view is also expressed in McCartney v. Taylor Aircraft Co., Mo.App., 140 S.W. 2d 95, cited by plaintiff. In both Bush v. Norman, supra, (delay of eleven months), and Manley v. Crescent Novelty Mfg. Co., supra, (delay of five months), the time was held unreasonable as a matter of law but there was no action on the part of the vendor to induce the purchaser to continue to use the property. See also Stone v. Kies, Mo.App., 227 S.W.2d 85, where the delay was six months. While plaintiff here was very slow in taking action to rescind, the evidence did show that complaint was being made to defendant about the condition of the machine and that defendant was making promises which the jury could find were for the purpose of inducing plaintiff to continue to use it pending correction of its defects or making a trade for another machine. It is also true that plaintiff did not use the machine after April 1, 1952 and had let defendant know about that. Nevertheless, if this had been a valid contract between private parties we would have to go beyond any previous Missouri case to hold a jury could find that rescission was attempted within a reasonable time. But see 12 Am.Jur. 1029, Sec. 447 and cases cited; See also A.L.I. Restatement of Contracts, Sec. 400.

However, we agree with defendant that the contract of purchase was not a valid contract (at least upon the second ground stated by defendant) and this makes the case very different from those hereinabove cited. Defendant considers that the applicable principle is that courts will not aid either party to an illegal contract. However, this contract was ultra vires rather than illegal. "The objection to the contract is not merely that the corporation ought not to have made it, but that it could not make it"; and furthermore it is a well established principle that a governmental unit is not estopped by illegal or unauthorized acts of its officers. See Donovan v. Kansas City, 352 Mo. 430, 175 S.W.2d 874,

179 S.W.2d 108 and cases cited. Section 26 of Article VI of the Constitution prohibits any political subdivision of the state from becoming "indebted in an amount exceeding in any year the income and revenue provided for such year", 26(a), except "by vote of two-thirds of the qualified electors thereof voting thereon". 26(b). It has been well established that this means no contract of such a political subdivision is valid which obligates it to make payments in subsequent calendar years. "The plain meaning of this constitutional provision is that any such municipal corporation may spend or contract to spend (become indebted) 'in any (calendar) year the income and revenue provided for such year,' but beyond that it cannot go in creating a debt for any purpose or in any manner, except by consent of two-thirds of the voters." Hawkins v. Cox, 334 Mo. 640, 66 S.W.2d 539, loc. cit. 543; see also Book v. Earl, 87 Mo. 246; Trask v. Livingston County, 210 Mo. 582, 109 S.W. 656, 37 L.R.A.,N.S., 1045; Ebert v. Jackson County, Mo.Sup., 70 S.W.2d 918; Sager v. City of Stanberry, 336 Mo. 213, 78 S.W.2d 431; Missouri Toncan Culvert Co. v. Butler County, 352 Mo. 1184, 181 S.W.2d 506. Therefore, in this case there was no actual contract to be rescinded. The contract signed was labeled "Purchase Order" and stated: "Please enter order of the undersigned for purchase of the following described machinery." It described the machine purchased and showed the settlement for it was "by trade in" of a "10 caterpillar patrol" and "2 lease payments of $1600.00 each plus int. 1st payment due Mar. 1, 1952, 2nd Mar. 1, 1953." It also stated "that the machinery is sold by the dealer with the standard warranty of the manufacturer." Plaintiff's evidence was sufficient to show that defendant knew it was dealing with plaintiff Township and intended a sale to it, knew that plaintiff owned the tractor traded in the deal and knew that the cash payment, of March 1, 1952, was made by it on a Township warrant. When this warrant was drawn is not shown by the evidence.

The matter of the right of a public body to recover payments made under an

invalid contract is covered by an Annotation in 140 A.L.R. 583. Recovery is not allowed where the public body has accepted and retained the benefits, where no restoration of the benefits has been made or is impossible, and where the contract is invalid only because not made in the way required but its general purpose is within the powers of the public body. We recently considered this question in Bride v. City of Slater, Mo.Sup., 263 S.W.2d 22, 27, 28 and held the city could not recover for fuel oil it had obtained and used in its municipal light plant. The contract of purchase was invalid because it did not comply with the statutory requirements as to stating the consideration in writing. We said: "In these circumstances (and limiting our decision to the circumstances of our case), we apply the recognized rule that a municipality cannot accept the benefits of a void contract and retain them and recover back the consideration paid."

The situation here is very different from that in the Bride case. In the first place, this contract was beyond the powers of the Township to make. Although it had authority to purchase road machinery (see Section 65.260) it had no power at all to create a debt for any purpose payable out of revenues of future years, without a two-thirds majority vote, because this was specifically prohibited by the Constitution. The enforcement of such a contract could have been enjoined. Hight v. City of Harrisonville, 328 Mo. 549, 41 S.W.2d 155; Sager v. City of Stanberry, supra; see also Nodaway County v. Kidder, 344 Mo. 795, 129 S.W.2d 857; 52 Am.Jur. 492, Sec. 41. Furthermore, the Township offers restoration here by tendering back the machine and it does not seem inequitable under the evidence to require repayment of the consideration paid because it appears that plaintiff got little, if anything, for its money. Not only did the only evidence in the case on this subject show that the machine it got was worth no more than the one it traded in but also showed that plaintiff paid out much for repairs including the time it paid its operator to work on repairs. Since defendant's only contention is that it was entitled to a directed verdict, the manner of submission of this case is not an appellate issue.

Defendant's final contention is that a lease was contemplated by the parties and not a sale, and that a lease was executed; and for this reason defendant claims to be entitled to a directed verdict. It is true that on June 30, 1951, three days after the purchase order was signed and the machine delivered, an instrument in the form of an optional lease was signed by the parties, which provided exactly the same consideration (including the trade-in of the tractor) for this optional lease of the machine as was provided for its purchase. (The option was to continue the lease for two successive years by making the 1952 and 1953 payments.) Plaintiff's evidence was that this instrument was signed by the board members upon the representation that it would help defendant to finance this in some way. Of course, at that time the sale was already completed and the tractor already turned over as the down payment on the purchase of this machine. The transaction was at all times treated as a sale by defendant. Moreover, no consideration was shown for this subsequent agreement as a modification of the purchase agreement, and it seems clear from the evidence there was none. Furthermore, in defendant's answer this claim of a lease is stated as a counterclaim under which defendant sought a judgment for the final payment, due March 1, 1953; but at the close of the evidence defendant announced that it had abandoned this counterclaim, and judgment was rendered against defendant on it without any objection or appeal therefrom by defendant. This contention is without merit.

The judgment is affirmed.

All concur.