**MERCANTILE BANK OF ILLINOIS, N.A., a national bank, Plaintiff–Appellant,**

v.

**SCHOOL DISTRICT OF OSCEOLA, Defendant–Respondent.**

No. 74542.

Supreme Court of Missouri, En Banc.

June 2, 1992.

Ross H. Briggs, Terry A. Parkinson, Dubail Judge, St. Louis, for plaintiff-appellant.

J.D. Baker, Osceola, for defendant-respondent.

ROBERTSON, Chief Justice.

The issue in this case is whether a lease entered by a school district of this state violates article VI, section 26(a) of the Missouri Constitution and is therefore void and unenforceable, where the lease requires the payments by the school district for a period exceeding one year. The trial court sustained the school district's motion for summary judgment. On appeal, the Court of Appeals, Southern District, affirmed. We granted transfer to consider the important question raised in this case. We have jurisdiction. Mo.Const. art. V, § 10. The judgment of the trial court is reversed and the cause is remanded for trial.

## I.

Mercantile Bank of Illinois, N.A., (the Bank) is the assignee of a copier lease agreement between the School District of Osceola (the School District) and Equity Rental Company, Inc. (Equity). The Bank's amended petition alleges that on or about August 24, 1987, Equity and the School District entered into a sixty-month lease agreement by which the School District leased two photocopy machines and agreed to pay $300 monthly. Under the lease agreement, the School District could not modify or cancel the lease, title to the copiers remained with the lessor, and all payments are accelerated on default.

The petition further alleges that Equity assigned its interest in the lease to the Bank and that the School District defaulted in making the required lease payments on August 4, 1990. The Bank filed suit, seeking accelerated payments under the lease of $8,569.20 plus interest, attorney fees, and costs.

The School District filed a motion for summary judgment, arguing that under article VI, section 26(a), it had no authority to enter into a multi-year lease and that any contract entered in violation of this consti-

tutional provision was void. The trial court entered its order sustaining the School's motion for summary judgment finding that no genuine issue of material fact existed and that the School District was entitled to summary judgment as a matter of law.

## II.

Article VI, section 26(a), provides:

No county, city, incorporated town or village, school district or other political corporation or subdivision of the state shall become indebted in an amount exceeding in any year the income and revenue provided for such year plus any unencumbered balances from previous years, except as otherwise provided in this constitution.

Article VI, section 26(a), serves the salutary purpose of prohibiting political subdivisions of this state from expending funds they do not have.

The evident purpose of [section 26(a)] ... was to abolish, in the administration of county and municipal government, the credit system and establish the cash system by limiting the amount of tax which might be imposed by a county for county purposes, and limiting the expenditures in any given year to the amount of revenue which such tax would bring into the treasury that year.

*Ebert v. Jackson County,* 70 S.W.2d 918, 919 (Mo.1934), *quoting Book v. Earl,* 87 Mo. 246 (1885) (Interpreting its similarly worded predecessor article X, section 12 (1875)).

In *Grand River Township v. Cooke Sales and Services, Inc.,* 267 S.W.2d 322 (Mo.1954), this Court extended *Ebert* to prohibit any multi-year contract entered by a political subdivision.

Section 26 of Article VI of the Constitution prohibits any political subdivision of the state from becoming "indebted in an amount exceeding in any year the income and revenue provided for such year," 26(a) except "by vote of two-thirds of the qualified electors thereof voting thereon." 26(b). *It has been well established*

*that this means no contract of such a political subdivision is valid which obligates it to make payments in subsequent calendar years....* [In such a case] there was no actual contract to be rescinded.

[Emphasis added.] *Id.* at 325.

The School District argues that *Grand River Township* decides this case. The Bank acknowledges that if *Grand River Township* is the law, the trial court did not err in entering summary judgment. Nevertheless, the Bank argues that *Grand River Township* is an incorrect reading of the constitution and should be overruled.

This Court abandoned the inflexibility of *Grand River Township* within a year. *State ex rel. Strong v. Cribb,* 273 S.W.2d 246 (Mo. banc 1954), involved an agreement under which Macon County agreed to lease road machinery and make payments over a three-year period. On default, the lease permitted the county to return the machinery within 15 days. *Strong* seems to say, though its reasoning is painfully obtuse, that where there are sufficient unencumbered funds in the county treasury to pay the entire contract amount at the time the contract is entered, the county may choose to pay the contractual amount over a period of years without violating article VI, section 26(a). Proceeding on the assumption that the agreement in question was "a sale and not a rental," the Court said:

> [T]here remained in the county treasury, at the end of 1952, a sum unencumbered sufficient in amount so that the County Court, ... could, if it saw fit, pay the entire amount due under the contract out of the unencumbered balance.

*Id.* at 250. The Court held that the agreement did not violate the constitution or the county budget law. Judge Hyde, who had written *Grand River Township* barely seven months before, dissented vigorously, arguing that the agreement violated article VI, section 26(a). In the face of this uncertainty in the precedent, we believe that a fresh consideration of the demands of article VI, section 26(a), is warranted.

■ As this case involves a school district, article VI, section 26(a), applies.

Once that threshold is crossed, the next inquiry centers on whether the lease under scrutiny creates an indebtedness of the School District. Under the teaching of *Scroggs v. Kansas City,* 499 S.W.2d 500, 504 (Mo.1973), a lease that creates "indebtedness which must be paid in all events" is a debt for purposes of article VI, section 26(a). The clear language of the School District's lease shows that the School District intended to create an obligation that must be paid in all events. For the sake of argument, we will proceed along the assumption that the lease agreement in question here is a debt within the meaning of section 26(a). (As will be discussed below, however, we are not convinced article VI, section 26(a), requires that the *total* of all lease payments due under a lease be considered in determining whether the constitutional limitation is exceeded.)

Article VI, section 26(a), does not prohibit all indebtedness. It prohibits only indebtedness "in an amount exceeding *in any year* the income and revenue provided *for such year* plus any unencumbered balances from previous years." [Emphasis added.] This language is ambiguous.

Three different interpretations immediately suggest themselves. First, the constitution could mean that a school district can enter a contract payable over more than one year provided it has enough unencumbered financial resources to pay the entire contract in the year in which the contract is entered. This is the interpretation suggested in *Strong.* Second, section 26(a) could mean that a school district can enter a contract requiring payments over more than one year provided the payments due in any one year of the contract do not exceed the county's revenue, income and unencumbered balances in that year. The third interpretation is not readily apparent from the text of the constitution, but was announced in *Grand River Township:* A political subdivision has no authority to enter a contract that obligates it to make payments in subsequent years.

The limitation on local government contained in article VI, section 26(a), originally appeared in article X, section 12 of the

Constitution of 1875, in slightly different language. "No county ... shall [become] *be allowed to* become indebted in *any manner, or for any purpose, to* [in] an amount exceeding in any year the income and revenue provided for such year [plus any unencumbered balances from previous years]." [Emphasized language is language of 1875 Constitution not found in 1945 Constitution; bracketed language is language of 1945 Constitution.] We do not believe the 1945 language is sufficiently different to require a different analysis.

*Book v. Earl,* 87 Mo. 246 (1885), is the seminal case interpreting the article X, section 12 of the 1875 Constitution. There, Holt County contracted to remodel and expand the county courthouse in 1881. The contractor completed the work in 1881. The county issued warrants to the contractor to pay for the work. The county did not have sufficient funds to honor the warrants in 1881; indeed, the trial court found that the contract obligated the county to pay $9,600 more than its revenue for 1881. In 1882, the county appropriated funds to pay the contractor's debt from 1881. Holt County taxpayers sued to enjoin the payment of the warrants from the previous year. This Court enjoined the payment of the warrants. "[I]n view [of] the fact that the debt of $9,600 sought to be contracted was in excess of the revenue provided for the year 1881, we must hold, under the provisions of the constitution referred to, it invalid and also the warrants issued to [the contractor] under the contract." *Id.* at 256.

*Book* does not hold the contract void. The contract is *voidable* on a factual showing that the contracted expenditure exceeded the county's ability to pay it with revenues in the year it was due.

Several cases cite *Book* but read *Book's* interpretation of the constitution unevenly. *See Hawkins v. Cox,* 334 Mo. 640, 66 S.W.2d 539 (1933) (An oral contract of a special road district to purchase a tractor for $2,500 payable $500 per year is void.); *Ebert v. Jackson County,* 70 S.W.2d 918 (Mo.1934) (A county's four-year lease of a room for a justice of the peace is void.); *Sager v. City of Stanberry,* 336 Mo. 213, 78 S.W.2d 431 (1934) (A city's contract to lease equipment for an electricity generating plant over a period of years is void where the contractual amount exceeds the city's revenues for the year in which the contract entered is void.); and *Missouri Toncan Culvert Co. v. Butler County,* 352 Mo. 1184, 181 S.W.2d 506 (1944) (A county's contract to purchase culvert material for $966.60 in December is void where the county's outstanding warrants exceed revenues by $39,000 at the time of the making of the contract.) From these precedents, *Grand River Township* fashions a bright line rule: All contracts entered into by a political subdivision that require payment over more than one year are void as a matter of law. However, as we have previously shown, *Strong* makes that bright line doubtful.

■ We return to *Book.* That case seems to understand, as cases citing *Book* often do not, that article VI, section 26(a), imposes two limitations. The first limits the amount of debt a political subdivision can acquire to provide *revenue* for current expenditures. The second limits current expenditures of a political subdivision to its revenue, income and unencumbered balances from previous years.

At the time of the passage of the 1875 Constitution, county government regularly borrowed against anticipated tax revenue to pay its bills; apparently, those governments had begun to borrow against future years' tax revenues to meet current obligations. *Book* describes this practice as "virtually mortgaging the property of the tax payer." 87 Mo. at 251. The vice that article X, section 12 of the 1875 Constitution intended to correct was the ability of county government to incur debt by tax anticipation notes for more than the current year.

The evident purpose of the framers of the constitution and the people who adopted it was to abolish, in the administration of county and municipal government, the credit system and establish the cash system by limiting the amount of

741

tax which might be imposed by a county for county purposes, and limiting the expenditures in any given year to the amount of revenue which such tax would bring into the treasury for that year. Section 12, *supra*, is clear and explicit on this point. Under this section the county court might anticipate the revenue collected, and to be collected, for any given year, and contract debts for ordinary current expenses, which would be binding on the county to the extent of the revenue provided for that year, but not in excess of it.

*Id.* at 252.

Understood as *Book* interprets it, the constitution prohibits a political subdivision from artificially increasing its spendable revenue by borrowing against taxes to be collected in future years. Article VI, section 26(a), says first to a political subdivision: "You may not borrow to increase what you have to spend in any year beyond a total of what your taxes will bring in for that year, whatever other income you may have for that year, and what you have left over from previous years that is not already encumbered."

Article VI, section 26(a), also acts as a limitation on expenditures. It also says to a political subdivision, "You cannot spend more than you have." An agreement to do just that is at the heart of *Book*. There, the county agreed to expend to the contractor a sum exceeding by $9,600 its fiscal resources for the year in which it agreed to make the payment. Once the trial court made this factual determination, the county's warrants could not be honored; they violated article X, section 12 and were voidable.

A lease of tangible personal property is a "contract by which one owning the property grants to another the right to possess, use and enjoy it for a specified period of time in exchange for periodic payment of a stipulated price, referred to as rent." *Black's Law Dictionary* 889 (6th ed. 1990), *quoting Undercofler v. Whiteway Neon Ad, Inc.*, 114 Ga.App. 644, 152 S.E.2d 616, 618 (1966). Under the lease in question in this case, the lessor continued as the owner of the property and the School District merely rented the copiers. So long as the School District made its rent payments, no more was due in a given year than $3,600.

Article VI, section 26(a), does not require the political subdivision, here the School District, to measure the entire lease obligation as a current expenditure. This is the import of the "in any year" and "for such year" language of section 26(a). Instead, rent payments are an expenditure for current expenses of the School District in the year-tight compartments in which those payments are due. Thus, only those payments due in a particular fiscal year are considered expenditures for determining whether the School District exceeded the expenditure limitation imposed by article VI, section 26(a). *Grand River Township* is overruled to the extent that it holds that all agreements by political subdivisions to make payments in subsequent years are void. We hold instead that the lease contract is voidable upon a showing that the School District entered an agreement to pay more than its "income and revenue provided for such year plus any unencumbered balances from previous years." Art. VI, § 26(a).

In this case, the School District defaulted on its payments under the lease on August 4, 1990. The Bank invoked the acceleration clause and sued for the entire remaining lease payments, a sum of $8,569.20 plus interest. Whether the School District had sufficient unencumbered fiscal resources to pay the remaining balance due in 1990 is a genuine issue of material fact.

Relying on *Grand River Township*, the trial court believed that the factual question of the School District's fiscal resources was not material. With the demise of *Grand River Township*, and our holding that the contract in question here is voidable, not void, such a factual inquiry is now material.

Summary judgment is appropriate only where there is no genuine issue of material fact and movant is entitled to judgment as a matter of law. *Ronollo v.*

*Jacobs,* 775 S.W.2d 121, 125 (Mo. banc 1989); Rule 74.04. The trial court erred in sustaining the School District's motion for summary judgment.

### III.

Accordingly, the judgment of the trial court is reversed and the cause is remanded.

COVINGTON, HOLSTEIN, BENTON, THOMAS, and PRICE, JJ., and LOWENSTEIN, Special Judge, concur.