**FORD MOTOR CREDIT CO.,**
**Appellant–Respondent,**

v.

**HOUSING AUTHORITY OF KANSAS CITY, MISSOURI, Respondent–Appellant.**

**No. WD 45669.**

Missouri Court of Appeals,
Western District.

Feb. 2, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1993.

James W. Humphrey, Jeanne Haas McKenna, Kansas City, for appellant.

Stephen G. Mirakian, Kansas City, for respondent.

Before BERREY, P.J., and ULRICH and SMART, JJ.

BERREY, Presiding Judge.

Ford Motor Credit Company appeals the amount of the judgment entered by the trial court following a trial to a jury of this breach of contract case. Housing Authority of Kansas City, Missouri appeals the trial court's judgment as to liability. The judgment as to liability is affirmed and the judgment as to damages is amended to conform with this opinion.

On August 1, 1988, Ford Motor Credit Company ("FMCC") and Housing Authority of Kansas City ("HAKC") entered into an Equipment Lease–Purchase Agreement ("Agreement") whereby FMCC would finance HAKC's purchase of computer and software equipment at a cost of approximately $230,000.00. Pursuant to the Agreement, payments were to be made over a five year period. Then–Executive Director Ben Montijo conducted all negotiations and signed the contract for HAKC.

There was uncontradicted testimony that portions of paragraphs 5 and 7 of the Agreement had been lined through at the time Montijo executed the document. Neither Montijo nor anyone representing HAKC had initialed the lined-through portions. Paragraph 5 pertains to non-appropriation of funds and provides for termination of the lease if funds were not "appropriated, budgeted or otherwise available" in any fiscal year covered by the lease. HAKC informs this court that the purpose of including this language is to protect the public from expenditure of funds by public entities that may not be in the public's best interest.

HAKC is a Missouri Municipal Corporation created pursuant to § 99.010, RSMo 1986. HAKC, a public housing authority, derives most of its operational funds through Annual Contributions Contracts between HAKC and the United States Department of Housing and Urban Development ("HUD").

David Rainer, FMCC's agent, who had the first contact with HAKC, testified that Montijo told him that the cancellation provisions contained in the form contract would not be applicable to this Agreement. In a letter dated May 2, 1988, Montijo informed Rainer that "unlike other municipal corporations, [HAKC is] able to make a long term financing commitment." In the same letter, Montijo itemized the budgeted expenses for the computer system then in use and compared those to the system being purchased, indicating that the proposed new system would actually cost HAKC $13,000.00 less per year than the current system.

Montijo also provided FMCC with a copy of the minutes of the April 13, 1988, meeting of the Board of Commissioners of HAKC, which memorialized the Board's discussion about the purchase of the new computer system and the resolution authorizing its acquisition. The resolution states in part:

WHEREAS, the Housing Authority proposes the establishment of an Enterprise Fund to purchase, own and sell use of the computer system to the various HUD programs operated by the Housing Authority;

NOW THEREFORE BE IT RESOLVED by the Board of Commissioners that the Executive Director is authorized to acquire the above-reference [sic] McDonnell Douglas computer system through the use of a Housing Authority Enterprise Fund.

The computer equipment was delivered to HAKC on August 1, 1988. On or about September 25, 1988, FMCC received a check in the amount of $4,831.79, the amount of the initial payment due under the Agreement.

In mid-August 1988, Montijo resigned and Venita Fain was appointed acting Executive Director. On September 26, 1988, FMCC sent three copies of page one of the Agreement to Montijo at HAKC requesting that he initial the lined-through portions of paragraph 5. Those pages were never returned to FMCC. Upon receiving the request to initial, Fain, who had been unaware of the Agreement, contacted HUD to determine her course of action. Thereafter, Fain notified FMCC that HAKC was exercising its right to terminate the Agreement pursuant to the provisions of paragraph 5, even though the termination language had been lined through. HAKC re-

quested that FMCC pick up the equipment and further notified them that no additional payments would be made because HUD had denied HAKC's budget request for the new equipment. FMCC refused to release HAKC from the contract alleging that the termination language had been lined through and, therefore, was no longer part of the Agreement.

The new computer system was never installed and, in fact, remained in the shipping crates. HAKC was unable to resell the equipment and in March 1990, FMCC sold the system for approximately $19,-000.00. FMCC sued HAKC for the deficiency on the contract.

Paragraph 9 of FMCC's original petition states, "That pursuant to § 18(i) all past due payments and payments due through the fiscal year 1989 are immediately due and payable." FMCC prayed for $82,-140.43, the amount due under the Agreement through December 1989. By letter of October 17, 1990, counsel for FMCC advised HAKC that it would ask leave of court to amend "by interlineation" paragraph 9 of its petition to read, "That pursuant to Section 18(i), all past due payments and payments due are immediately due and payable." FMCC also advised that the prayer would be amended to remove the specific amount and pray "for such sums as are due and payable." The final paragraph of FMCC's letter states, "It is our intention by the above interlineation to ask for damages at the time of trial those sums that have accrued to that time."

By letter dated October 18, 1991, counsel for FMCC reminded HAKC of its intent to amend by interlineation, referencing the letter of October 17, 1990. No written motion to amend was filed with the court. By oral motion the first day of trial, FMCC moved to amend pursuant to the letter of October 17, 1990. The court sustained FMCC's motion over HAKC's objection.

The issue of liability under the Agreement was tried to the jury. By agreement of the parties, damages were determined by the court. The crux of the issue submitted to the jury was whether the parties to the agreement intended to delete the non-appropriation language from the contract.

The jury found in favor of FMCC and the court assessed damages against HAKC as follows: $105,934.36 in damages, interest and late charges of $18,826.67 giving HAKC a credit of $19,272.00 for the amount received on the sale of the equipment. The court ordered that FMCC recover from HAKC the sum of $105,489.03.

FMCC appeals the amount of the judgment claiming that the trial court erred in limiting FMCC's damages to payments that had accrued as of December 31, 1990, because FMCC was entitled to anticipate HAKC's continued breach and, therefore, to the full amount under the contract. FMCC also claims trial court error in not assessing FMCC's attorney's fees against HAKC, as allowed under the Agreement.

On cross-appeal, HAKC claims the trial court erred in denying HAKC's motion for judgment notwithstanding the verdict because (1) judgment was barred by Article VI, Section 26(a) of the Missouri Constitution; (2) as a matter of law, there was no enforceable agreement because (a) FMCC rejected HAKC's offer and HAKC did not accept FMCC's counteroffer, or (b) the agreement lacks mutuality of assent to the same terms at the same time; and (3) HAKC had a common law or statutory right to terminate the agreement based on non-availability or non-appropriation of funds. HAKC also claims the trial court erred in allowing testimony by David Rainer concerning the oral agreement by Montijo to exclude the termination language contained in paragraph 5 of the Agreement because the testimony violated the statute of frauds or the parole evidence rule.

Our scope of review is defined in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This court will sustain the judgment of the trial court unless no substantial evidence supports it; it is against the weight of the evidence; it erroneously declares the law; or it erroneously applies the law. Logic requires that we first address the points raised by HAKC on cross-appeal.

Concerning HAKC's brief, much of what is included in its statement of facts is, in actuality, argument.

Rule 84.04(c) requires that an appellant's brief include a statement of facts which is "a fair and concise statement of the facts relevant to the questions presented for determination...." It has long been recognized that the primary purpose of the statement of facts is "to afford an immediate, accurate, complete and *unbiased* understanding of the facts of the case...." *State ex rel. Webster v. Missouri Resource Recovery, Inc.*, 825 S.W.2d 916, 936–37 (Mo.App.1992). Additionally, the majority of HAKC's statements are unsupported by reference to the trial transcript or legal file. Rule 84.04(h) requires all statements of fact and argument to have specific page references to the legal file or transcript. "By flirting with violations of the Rules, a party does little to help its case." *Uhle v. Sachs Elec.*, 831 S.W.2d 774, 776 (Mo.App. 1992). Through a great deal of effort, this court has gleaned the facts from HAKC's argument, scrutinizing the exhibits and thoroughly reading and reviewing both the transcript and legal file.

## I.

HAKC raises as its first point of error that the judgment for FMCC is barred by Article VI, Section 26(a) of the Missouri Constitution of 1945. HAKC's answer to FMCC's petition was filed on October 5, 1989. Trial of the matter was conducted in October 1991, at which time HAKC filed two trial briefs, a motion for directed verdict after the close of FMCC's case and a motion for directed verdict after all evidence had been heard. The trial court's judgment was entered on December 11, 1991, and on December 20, 1991, HAKC filed a motion for new trial or, alternatively, judgment notwithstanding the verdict. On January 21, 1992, HAKC filed "REPLY SUGGESTIONS OF HOUSING AUTHORITY OF KANSAS CITY, MISSOURI IN SUPPORT OF MOTION FOR NEW TRIAL OR, ALTERNATIVELY, FOR JUDGMENT NOTWITHSTANDING THE VERDICT," wherein HAKC raises for the first time its argument that enforcement of the Agreement "constitutes a direct violation of Article VI, Section 26(a) of the Missouri Constitution of 1945." Section 26(a) states:

No county, city, incorporated town or village, school district or other political corporation or sub-division of the state shall become indebted in an amount exceeding in any year the income and revenue provided for such year plus any unencumbered balances from previous years, except as otherwise provided in this constitution.

The rules concerning raising a constitutional question are firmly established.

A constitutional question must be raised at the earliest possible time consistent with good pleading and orderly procedure under the circumstances of a given case. Otherwise, it will be waived. *Creamer v. Banholzer*, 694 S.W.2d 497, 499 (Mo.App.1985) (citations omitted).

To properly raise a constitutional question, plaintiffs are required to:

(1) raise the constitutional question at the first available opportunity; (2) designate specifically the constitutional provision claimed to have been violated, such as by explicit reference to the article and section or by quotation of the provision itself; (3) state the facts showing the violation; and (4) preserve the constitutional question throughout for appellate review.

*Callier v. Director of Revenue*, 780 S.W.2d 639, 641 (Mo. banc 1989).

HAKC candidly admits awareness of the rules applicable to raising constitutional issues but attempts to excuse its tardiness by informing this court that it did not assert violation of the Constitution earlier because counsel for HAKC was not aware until the holding in *Mercantile Bank of Illinois [N.A. v. School Dist. of Osceola*, 834 S.W.2d 737 (S.D.Mo.1991) ], decided 10 days after Judgment of the effect of Section 26 of the Constitution in reference to a multi-year Lease or Purchase Agreement.

The Missouri Supreme Court subsequently granted transfer of *Mercantile Bank* and in its opinion discussed the history of case law interpreting Section 26(a) beginning with *Book v. Earl*, 87 Mo. 246 (1885). *Mercantile Bank of Illinois, N.A. v.*

*School Dist. of Osceola,* 834 S.W.2d 737, 738–39 (Mo. banc 1992). In 1954, the Missouri supreme court decided two separate cases interpreting article VI, section 26. In the earlier of the two, the Court held that the language of § 26 means *"no contract of such a political subdivision is valid which obligates it to make payments in subsequent calendar years.... [In such a case]* there was no actual contract to be rescinded." *Id.* at 739 (emphasis added) (quoting *Grand River Township v. Cooke Sales and Services, Inc.,* 267 S.W.2d 322, 325 (Mo.1954)).

Barely seven months later, the supreme court decided *State ex rel. Strong v. Cribb,* 364 Mo. 1122, 273 S.W.2d 246 (1954). In interpreting *Strong,* the supreme court stated:

> Strong seems to say, though its reasoning is painfully obtuse, that where there is sufficient unencumbered funds in the county treasury to pay the entire contract amount at the time the contract is entered, the county may choose to pay the contractual amount over a period of years without violating article VI, section 26(a).

*Mercantile Bank,* 834 S.W.2d at 739. *Mercantile Bank* holds:

> [O]nly those payments due in a particular fiscal year are considered expenditures for determining whether the School District exceeded the expenditure limitation imposed by article VI, section 26(a).... We hold ... that the lease contract is voidable upon a showing that the School District entered an agreement to pay more than its "income and revenue provided for such year plus any unencumbered balances from previous years.

*Id.* at 741. The holding in *Mercantile Bank* is not so dissimilar from that in *Strong,* the controlling authority since 1954, so as to excuse HAKC's failure to timely raise the constitutional issue. Having not raised this issue at the earliest possible time, HAKC's Point I is denied.

### II.

■ As its second point on appeal, HAKC claims the Agreement was unenforceable because FMCC rejected HAKC's offer and HAKC did not accept FMCC's counter offer or the Agreement lacks mutuality of assent to the same terms at the same time. HAKC summarizes its first argument as follows:

> [B]y submitting the signed forms to FMC on or about June 1, 1988, HAKC communicated its offer of contract to FMC and that unless and until FMC had agreed to HAKC's proposed terms, there was no agreement entered.... Rather than accepting HAKC's offer as it was communicated on or about June 1, 1988, on September 26, 1988, FMC sent its counter-proposal to HAKC specifying that FMC would execute the agreement (and thereby become bound by it) only if HAKC would first acknowledge its agreement to deletion of the "right to terminate" clause contained in paragraph 5 of the Form and if HAKC would cure its default in payments. The letter of September 26, 1988 ... constituted FMC's counter offer.

This tenuous and tortured argument falls of its own weight. It is completely unsupported by the facts in evidence. The September 26, 1988, letter is signed by Jeri Shami and states:

> Enclosed is an invoice for your September and October lease payments as well as three copies of the lease-purchase agreement, *page one.* Please initial next to the deletions on section 5 of the agreement.
>
> After execution, please send all three copies of page one to my attention....
>
> Upon receipt I will have the documents executed for Ford Credit and send a copy for your files (emphasis added).

It is obvious from the letter that only page one was sent for initialling. The actual form agreement is a three page document with the signature blocks on page three. It is obvious from the letter and Ms. Shami so testified at trial, that what she meant by execution was actually initialling the deletion. Additionally, Theresa Shepherd, the FMCC employee who sent the original document to Montijo for his signature, testified that the termination language contained in paragraphs 5 and 7

were lined through before the Agreement was mailed to Montijo for his signature.

On review, this court views the evidence in the light most favorable to the verdict. *Roark Motor Lodge Interval Sales Corp. v. Lindner*, 779 S.W.2d 684, 686 (Mo.App. 1989). "The jury is the sole judge of the credibility of the witnesses and the weight and value to be given their testimony and can believe or disbelieve any part of that testimony." *Id.* The jury evidently chose to believe the testimony of Ms. Shami and Ms. Shepherd.

By signing the Agreement, Montijo accepted FMCC's offer on behalf of HAKC. When Montijo signed the Agreement with the termination language lined through, the parties agreed to the same terms at the same time. HAKC's Point II is denied.

### III.

For its third point of error, HAKC argues that JNOV was proper because HAKC had a common law or statutory right to terminate the agreement on the basis of non-availability or non-appropriation of funds. HAKC argues that it is created by statute and has only such powers and authority as are expressly given by statute. As a public housing authority, HAKC is required to comply with the United States Housing Act and all regulations pertaining thereto. Because HAKC cannot carry out its duties without funds from the United States treasury through HUD, HAKC is "required by law" to comply with all procurement regulations, circulars and guidelines propounded by HUD and other federal regulatory agencies.

HAKC argues that procurement guidelines and regulations established by HUD and the Office of Management and Budget ("OMB") *require* contracts that obligate a public housing authority for an amount in excess of $10,000.00 of United States Treasury funds to contain a clause permitting the public housing authority to terminate the contract if sufficient funds are not budgeted, appropriated or otherwise available. HAKC's argument continues that because this clause is *required*, HAKC's contract with FMCC is not within HAKC's powers and, therefore, the termination clause should be incorporated into the contract despite whether or not it was intended to be deleted from the written agreement.

The Procurement Handbook for Public Housing Agencies (April 1987) was introduced as an exhibit at trial. Attached as appendix 5 and made part of the handbook is "Circular A–102 of the OMB." Paragraph 14 of the circular concerns contract provisions and states:

> [A]ny recipient of Federal grant funds shall include the following contract provisions or conditions in all procurement contracts and subcontracts as required by the provision, Federal Law or the Grantor Agency.
>
> .    .    .    .    .
>
> b. All contracts in excess of $10,000 shall contain suitable provisions for termination by the grantee including the manner by which it will be effected and the basis for settlement.

The general information paragraph of the handbook, however, states:

> The procedures and guidelines herein follow the procurement standards established by the Office of Management and Budget, outlined in Attachment [O] to OMB Circular A–102. (See Appendix 5.) *Compliance with the Attachment O are [sic] not mandatory at this time.* In view of the fact that they may become mandatory in the near future, PHAs should have a current OMB Circular A–102 on file and should seek to comply on a voluntary basis at this time (emphasis added).

HAKC urges this court to follow the Federal Court of Claims in *G.L. Christian & Associates v. United States*, 160 Ct.Cl. 1, 312 F.2d 418, *cert. denied* 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963). In *G.L. Christian* the government conceded that the claimants were entitled to be made financially whole. *Id.* 312 F.2d at 423. The principal legal question answered by the case is whether the claimant could recover for anticipated profits. *Id.* The Federal Court of Claims held that the termination clause, which was incorporated, as a matter of law, into the contract at issue, prohibits recovery of anticipated but unearned profits. *Id.* at 426. Even under

the termination clause, however, the contractor was entitled to the cost of the work that had been performed. *Id.*

HAKC also cites this court to *Earthmovers of Fairbanks, Inc. v. State, Dep't of Transp. & Public Facilities,* 765 P.2d 1360 (Alaska 1988). In that opinion, the Alaska Supreme Court discussed federal and state cases addressing enforceability of public contracts. The general rule emerging from that discussion, and the one this court chooses to follow, is that the party contracting with the governmental agency who is neither aware of nor the cause of the illegality or mistake in the award of the contract is limited in its recovery to "expenses incurred in good faith prior to receipt of notice of suspension" of the contract. *Id.* at 1365.

> [W]here an agency has the general authority to award such a contract, but the award is technically or procedurally flawed such that it violates a statute, a contractor will be permitted quantum meruit recovery so long as the award is not marked by fraud or bad faith and does not manifestly contravene public policy. *Noel v. Cole,* [98 Wash.2d 375,] 655 P.2d 245, 250 (Wash.1982). "A private party acting in good faith may recover to the extent necessary to prevent manifest injustice or unjust enrichment." *Id.* He may recover the reasonable value of his performance.

*Earthmovers,* 765 P.2d at 1368.

No evidence exists that FMCC was aware of or the cause of "wrongful" exclusion of the termination language. To the contrary, Montijo provided FMCC with more than adequate assurance that HAKC had authority to so contract. Although this court does not agree with HAKC that exclusion of the language violated the procurement guidelines, we do find that FMCC acted in good faith and is entitled to recover the reasonable value of its performance. HAKC's Point III is denied.

### IV.

For its fourth and final point, HAKC alleges trial court error in allowing David Rainer to testify about the oral agreement of Montijo to exclude the termination language in paragraph 5 of the Agreement. HAKC claims this testimony violated the statute of frauds or the parol evidence rule. The cases cited by HAKC address the proposition that municipal corporations may not contract orally. Oral agreement for the expenditure of municipal funds is void. *See Bride v. Slater,* 263 S.W.2d 22 (Mo.1953).

In the case at bar, however, the agreement between FMCC and HAKC was memorialized by a writing signed by Montijo on behalf of HAKC. Portions of that writing, which is a form agreement provided by FMCC, are lined through indicating that certain language contained in the form is not applicable to this agreement. HAKC argued that the lines did not appear on the contract at the time Montijo executed the document. At issue, therefore, was when the lines were drawn.

> Parol evidence is admissible to show that an alteration was made in a writing, to show the circumstances surrounding such alteration, and to show the effect on the instrument. Such evidence is also admissible as to matters relating to erasures in, or mutilation of, instruments.

32A C.J.S. *Evidence* § 933 (1964). Accordingly, the testimony of David Rainer was admissible and HAKC's Point IV is denied.

### V.

We now address FMCC's points raised on appeal. FMCC first argues that it is entitled to the full amount payable under the contract instead of limiting the award to damages accrued as of December 31, 1990, plus interest and late charges, which is apparently what the trial court allowed. As noted above, FMCC originally prayed only for the amount due under the agreement through December 1989. By letter of October 17, 1990, FMCC advised HAKC that, at the trial of the matter, it intended to ask for damages of all sums that had accrued at that time. Although FMCC's petition may not have been artfully drawn, there is no denying that HAKC was on notice that FMCC would ask for all damages then due and owing at the time of trial.

According to FMCC's petition, it was proceeding pursuant to paragraph 18(i) of the Agreement. That sub-paragraph allows FMCC, upon default by HAKC, to "declare an amount equal to all amounts then due under the Lease, and all remaining Lease Payments due during the Fiscal Year in effect when the default occurs to be immediately due and payable, whereupon the same shall become immediately due and payable." The fiscal year referred to in the Agreement is the calendar year.

The trial of the matter was conducted in late October 1991. On the first day of trial, FMCC made oral motion for "leave of court to ask for the damages that have accrued under the contract *to date*," which motion was sustained.

Because the trial court sustained FMCC's motion to amend its prayer to include all sums then due, there is no substantial evidence to support the trial court's award of damages that were due only through 1990. Therefore, FMCC is entitled to all payments due and owing as of December 31, 1991. It is not entitled to accelerate as to all payments due under the contract because it failed to plead acceleration.

The monthly lease payment amount is $3,783.37, which includes interest. Monthly payments were to begin on August 1, 1988. Therefore, as of December 1, 1991, forty-one payments had accrued, for a total of $155,118.17. Both parties agree that HAKC made one payment in the amount of $4,831.79 and FMCC was able to sell the equipment for $19,272.00. Applying these amounts to the total amount accrued results in total damages of $131,014.38.

As stated above, we find that FMCC's recovery is limited to expenses incurred. Prior to notice of termination of the contract, FMCC had paid out $185,375.76 on behalf of HAKC. Because HAKC's failure to repay the loan denied FMCC the opportunity to reinvest its money, the interest payable under the contract is an expense incurred by FMCC and is included as part of the damages. Late charges, on the other hand, do not constitute an expense incurred and, therefore, will not be awarded as damages. Accordingly, the damage award is amended to conform with this opinion and totals $131,014.38.

## VI.

As its second point on appeal, FMCC claims it is entitled to attorneys' fees incurred in the prosecution of this matter as provided in paragraph 18 of the Agreement. The trial court neither awarded attorneys' fees nor explained why it did not. In its suggestions to the trial court supporting its demand for damages, FMCC submitted itemized statements of attorneys' fees and expenses in the total amount of $24,383.43. On appeal, FMCC urges this court to remand the case to the trial court to hear evidence concerning FMCC's continued fees and costs. Paragraph 18 of the Agreement sets forth remedies for default and states in pertinent part, "Lessee will remain liable ... for all legal fees and other costs and expenses, including court costs, incurred by Lessor with respect to the enforcement of any of the remedies listed above or any other remedy available to Lessor."

This court will overrule a trial court's award of attorneys' fees only in case of abuse of discretion. *McPherson Redevelopment Corp. v. Shelton*, 807 S.W.2d 203, 207 (Mo.App.1991). An award of attorneys' fees "should not be reversed unless the amount awarded is arbitrarily arrived at or so unreasonable as to indicate indifference and lack of proper judicial consideration." *Burden v. Burden*, 811 S.W.2d 818, 822 (Mo.App.1991) (citing *Brown v. Brown*, 495 S.W.2d 89, 92 (Mo. App.1973)).

> The general rule in Missouri is that attorneys' fees are not awarded as a matter of right even to the successful litigant. Rather, our law provides the recovery of fees only when they are provided for by contract, statute or where equity may require. Where the claim to attorneys' fees is based upon a contract, the court must adhere to the terms of the contract and may not go beyond it.

*Harris v. Union Elec. Co.*, 766 S.W.2d 80, 89 (Mo. banc 1989).

This court has held that evidence of payment of attorneys' fees and expenses is substantial evidence that the charges incurred are reasonable and necessary. *Howard Constr. Co. v. Teddy Woods Constr. Co.*, 817 S.W.2d 556, 564 (Mo.App. 1991). Counsel for FMCC provided the trial court with copies of itemized statements for professional services. Those statements indicate that FMCC paid all charges submitted to it in a timely manner. We, therefore, find that attorneys' fees of $24,383.43 should be assessed against HAKC in favor of FMCC.

The trial court's judgment as to liability in favor of FMCC is affirmed. Pursuant to Rule 84.14, the judgment on damages is amended to conform with this opinion as follows: Judgment in favor of FMCC and against HAKC in the amount of $155,397.81, which includes $131,014.38 in damages and $24,383.43 in attorneys' fees.

All concur.