**MACKEY & ASSOCIATES, INC.,**
**Plaintiff/Respondent,**

v.

**RUSSELL & AXON INTERNATIONAL**
**ENGINEERS–ARCHITECTS, LTD.,**
**Defendant/Appellant.**

No. 58417.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 7, 1991.

Stephen F. Meyerkord, Linda Hahn, Casey & Meyerkord, St. Louis, for defendant/appellant.

Christine F. Miller, Joel I. Dennis, Husch, Eppenberger, Donohue, Cornfeld & Jenkins, St. Louis, for plaintiff/respondent.

SMITH, Presiding Judge.

Defendant appeals from a judgment, based on a jury verdict, awarding plaintiff $64,479 actual damages and $75,000 punitive damages on a fraud claim. We reverse.

Plaintiff is an architectural firm. Defendant is an engineering firm. Defendant approached plaintiff with a proposal that the two companies collaborate to bid on a project in Baha, Saudi Arabia. The vice-president of plaintiff, Meyer, met with the president of defendant, Shirey, in Florida. Meyer testified "He [Shirey] advised me they had a large staff in Saudi Arabia. Saudi Arabia represented their largest profits source, and that they had—and I knew this was necessary—arrangements with a local firm which made them acceptable to the Saudis." The parties agreed to the joint venture and the sharing of costs and profits. In the initial submission of the proposal plaintiff bore the major obligation of providing the drawings and the concept. Defendant's major role would occur when the joint venture had obtained the project. While the work was being done to obtain the Baha project, defendant became aware of a larger and more prestigious project in Riyadh—the Justice Palace. The parties agreed to also seek that project.

Meyer testified that the Baha project papers were sent to defendant's vice-president in Saudi Arabia, Moussly, for presentation. Meyer himself took the Justice Palace papers to Riyadh and made the presentation. Moussly testified that Meyer came

to Saudi Arabia for the Baha presentation and made the presentation. Moussly was the only engineer employed by defendant in Saudi Arabia at the time of the presentation of the Baha and Justice Palace proposals. Meyer testified he first became aware of defendant's actual staff when he arrived in Saudi Arabia for the Justice Palace presentation. As part of plaintiff's case it read portions of Moussly's deposition which indicated that defendant had "staff to serve contracts; we don't have staff sitting doing nothing in an office. If your talking about administrative staff, we had four" exclusive of himself.

The parties did not obtain the Baha project. The presentation on the Justice Palace resulted in further material being requested by the contracting authority on a portion of the overall proposal. Between the original presentation and the subsequent presentation defendant was disqualified by the contracting authority. Plaintiff and a British engineering firm went forward with the subsequent presentation but were unsuccessful in obtaining any portion of the Justice Palace project. Plaintiff presented no evidence of the reason for defendant's disqualification. Moussly testified the contracting party wanted a firm with more experience in handling water table problems, specifically the British firm. Moussly did not regard this explanation as legitimate. There was no evidence that the disqualification had any effect on the awarding of the contract. There was no evidence that the absence of additional staff of defendant had any effect on the presentation or the awarding of contracts on either of the projects. Meyer testified that loss of the contracts was not attributable to defendant. Nor did plaintiff adduce any evidence that the absence of staff in Saudi Arabia increased its work load or created additional expense for it in carrying out its obligations in the joint venture.

Plaintiff sued defendant for fraud and breach of contract. The fraud allegations were premised on the theory that but for the representation concerning defendant's staff in Saudi Arabia it would not have entered into the joint venture. It sought to recover all its labor costs and expenses incurred in making the two proposals. Both the fraud and contract theories were submitted to the jury. We have already indicated the jury's verdict on the fraud count. On the contract count it found defendant in breach of the contract and awarded damages of one dollar. The trial court changed the damage award to zero dollars with consent of the plaintiff. No appeal has been taken from the judgment on the contract count.

On appeal defendant raises two issues. It contends initially that the representation of a "large staff" was simply an opinion and not a representation of fact. Secondly, it contends plaintiff established no damages arising from the alleged misrepresentation. We need not rule the first issue. We do note in passing some considerable doubt that plaintiff established that the representation was false. Plaintiff relied upon the small permanent staff of defendant in Saudi Arabia to establish falsity. The clear import of Moussly's deposition testimony offered by plaintiff as well as additional portions offered by defendant was that defendant maintained a small administrative staff permanently and contracted for such additional personnel as required for projects it obtained. There was no evidence that such additional personnel were necessary for the presentation phase of either project. In fact, the evidence established that Meyer and Moussly were able to prepare and present all necessary material for the two projects. We have doubt that the representation made can be interpreted as a representation that defendant maintained a "large permanent staff".

We turn to the damage issue. Damages must flow from the fraud as the proximate cause and not the remote cause. *Hanrahan v. Nashua Corporation,* 752 S.W.2d 878 (Mo.App.1988) [11, 12]. It is not enough that damage follow upon misconduct, but the tort must be the legal cause of the damage. Tortious conduct is a legal cause of damage if it is a substantial factor in the production of the harm. *Rigby Corporation v. Boatmen's Bank and Trust Co.,* 713 S.W.2d 517 (Mo.App. 1986) [25–27].

■ Essentially plaintiff is entitled to recoup damages which it sustained because of the shortage of staff of defendant in Saudi Arabia. That could consist of extra expense to plaintiff because of added load which it took on in working on the projects. Or it could include expenses which it expended on the projects which were lost because the shortage of defendant's staff caused the projects to be rejected. Neither of those losses was established to have occurred. There is no causal effect between the alleged misrepresentation and losses which plaintiff sustained on the projects. Plaintiff's loss occurred proximately from the failure to obtain the contracts. If the alleged representation had been true the same loss would have been incurred. In that posture plaintiff failed to establish its consequent and proximately caused injury.

The judgment on the fraud claim is reversed.

SATZ and CARL R. GAERTNER, JJ., concur.