# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3345

_____

| | | |
|---|---|---|
| First Bank of Marietta, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Robert L. Hogge, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: January 22, 1998
Filed: November 6, 1998

_____

Before McMILLIAN, FLOYD R. GIBSON, and BOWMAN,[1] Circuit Judges.

_____

FLOYD R. GIBSON, Circuit Judge.

First Bank of Marietta ("First Bank") appeals the summary judgment that the district court[2] entered against it in First Bank's fraudulent misrepresentation case against Robert L. Hogge, the presiding commissioner of Moniteau County, Missouri. For the reasons set forth below, we affirm.

_____

[1]The Honorable Pasco M. Bowman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 18, 1998.

[2]The HONORABLE NANETTE K. LAUGHREY, United States District Judge for the Eastern and Western Districts of Missouri.

## I. BACKGROUND

The following summary is based largely upon the district court's statement of facts and the parties' Agreed Statement as the Record on Appeal.

On December 10, 1990, Moniteau County, Missouri ("County") entered into a lease-purchase agreement with Pioneer Leasing Corporation ("Pioneer") in which the County agreed to lease certain emergency radio equipment. The lease-purchase agreement stated that the lessor makes no warranties regarding the condition, quality, or fitness of the equipment. Pioneer subsequently assigned all of its rights, titles and interests in the lease to Consolidated Financial Services ("Consolidated"). On June 14, 1991, Robert Hogge, the presiding commissioner of the County, executed a Certificate of Acceptance in which he represented that the individual pieces of equipment received pursuant to the lease-purchase agreement were in good working order, were suitable for the County's purposes, and were unconditionally received for all purposes of the lease-purchase agreement.

On June 26, 1991, Consolidated and First Bank signed a bill of sale and assignment in which Consolidated assigned all of its rights, titles and interests in the lease to First Bank. Alan N. Shind, the vice-president of First Bank, stated that First Bank relied upon Hogge's Certificate of Acceptance in purchasing the lease.

Thereafter, Hogge acknowledged that "the equipment described in [the lease-purchase agreement] was not operational on June 14, 1991." Agreed Statement As The R. On Appeal at Ex. 3. Hogge stated that he signed the Certificate of Acceptance at the request of an individual who informed Hogge that "the document was a formality required in order to receive payment, and that the said equipment would be properly installed and made fully functional." Id. Moreover, Hogge indicated that the radio equipment "has never been properly installed and made fully operational." Id. Shind

countered that First Bank would not have purchased the lease or disbursed funds had it known that these allegations in Hogge's Certificate of Acceptance were false.

The County's first payment to First Bank of $11,690.72 was due on December 10, 1991. The County did not pay this payment but, instead, rejected the equipment by correspondence to Consolidated,[3] dated December 3, 1991, which claimed that the system was not operational and that much of the equipment was non-conforming. Thereafter, by a letter dated August 21, 1992, the County informed First Bank's counsel that the County did not believe that the lease-purchase agreement was enforceable under the Missouri Supreme Court ruling in Mercantile Bank of Illinois v. School Dist. of Osceola, 834 S.W.2d 737 (Mo. 1992).[4] In particular, the County explained that

> [b]ecause [it] has now been forced to operate on a deficit budget, this contract does not appear to be enforceable under the recent Missouri Supreme Court ruling in Mercantile Bank. . . .
>
> As the situation stands, we cannot use the equipment, the equipment is sitting in boxes depreciating every day and a lot of economic waste is occurring.

Agreed Statement As The R. On Appeal at 4-5.

---

[3]Although not pertinent to this appeal, the parties' Agreed Statement As The R. On Appeal states that this letter was sent to Consolidated despite the fact that, on December 3, 1991, Consolidated already had assigned all of its rights in the lease-purchase agreement to First Bank.

[4]The Missouri Supreme Court, in Mercantile Bank, interpreted Article VI, Section 26(a) of the Constitution of the State of Missouri. Article VI, Section 26(a) provides that "[n]o county . . . shall become indebted in an amount exceeding in any year the income and revenue provided for such year plus any unencumbered balances from previous years."

In a second letter dated November 6, 1992, the County again wrote to First Bank's counsel and stated that

> [a]s you may have heard in the news, our County Commission has been publicly criticized by State Auditor Margaret Kelly's office because of our budget deficit situation. We were in poor condition prior to having to face the multiple capital murder cases which are now pending. Without a doubt our situation falls squarely within the Missouri Supreme Courts [sic] ruling in <u>Mercantile Bank</u>. . . . Please be advised that Moniteau County asserts the additional defense that the contract is voided for the reason that Moniteau County lacks sufficient unencumbered fiscal resources to pay any additional funds as due. . . .
>
> The situation remains that we cannot make the system work and that we are not using any part of it.

<u>Id.</u> at 5.

On February 26, 1993, First Bank filed a petition[5] in Moniteau County Circuit Court seeking damages against the County under the lease-purchase agreement. This petition alleged, in pertinent part, as follows:

> 7. Pursuant to the lease Moniteau County agreed to pay three equal installments of Eleven Thousand, Six Hundred Ninety and 72/001 [sic] ($11,690.72) Dollars with the first payment due December 10, 1991, an additional payment due December 10, 1992, and a final payment due December 10, 1993, for a total of Thirty-five Thousand, Seventy-two and 16/100 ($35,0072.16) (sic) Dollars.

---

[5]First Bank later dismissed this petition against the County without prejudice; however, allegations contained within this petition are relevant to issues raised on appeal.

8. Moniteau County has defaulted in making the December 10, 1991 and December 10, 1992 payments.

9. By virtue of Moniteau County's default, [First Bank] has accelerated all payments and the same are now due and payable but Moniteau County has failed and refused, despite demand, to perform its obligations under the lease.

10. By virtue of [the County's] entry into and breach of the lease, First Bank of Marietta is legally entitled to receive the payments referred to in paragraph 7, totaling $35,072.16, along with interest at the highest lawful rate from the due date of each installment payment, and late fees as provided by the lease.

\* \* \*

WHEREFORE, [First Bank] prays this judgment against [the County] in the amount of Thirty-five Thousand, Seventy-two and 16/100 ($35,072.16) Dollars, plus interest at the highest legal rate from December 10, 1991, for late charges as provided in the lease, reasonable attorney's fees, court costs and costs of collection as provided by the agreement, and for such other and further relief as this court deems just and proper.

Id. at 5-6.

The County's answer to First Bank's state court petition, in pertinent part, responded that the lease-purchase agreement "violates on its face Article VI, Section 26(a) of the Constitution of the state of Missouri. . . . [and that the County] timely informed [First Bank] . . . that its obligations, if any, under the lease purchase agreement were voided by inability to constitutionally pay the same." Id. at 6.

On December 10, 1993, the County did not make the third payment to First Bank that was originally due on that date. The total income and revenue received by the County during fiscal year 1991 was greater than the amount of the payment due under the lease-purchase agreement on December 10, 1991, $11,690.72. However, Anita Groepper, the County Clerk, stated that the County did not have available unencumbered funds to pay the entire balance on the lease-purchase agreement, $35,072.16, in fiscal years 1991, 1992, and 1993.[6]

Later, First Bank voluntarily dismissed its state court action against the County without prejudice. First Bank, then, filed its action claiming damages against Hogge based upon his alleged fraudulent misrepresentation in the Certificate of Acceptance in the United States District Court for the Western District of Missouri, on the basis of diversity jurisdiction.[7] After discovery was completed, First Bank and Hogge each filed motions for summary judgment. The district court denied First Bank's motion for summary judgment but granted Hogge's motion for summary judgment. The district

---

[6]First Bank and the County dispute the timing of First Bank's acceleration of the payments due under the lease-purchase agreement as well as the amount of unencumbered funds the County had available from 1991-93. First Bank claims that it first demanded payment of all amounts due under the lease when it filed its state court petition in February of 1993. Prior to that time, First Bank had made no such demand against Moniteau County. In addition, First Bank's vice-president Shind stated that "First Bank never accelerated payments under the lease to Moniteau County." Agreed Statement As The R. On Appeal at 10.

However, the County cites to First Bank's own February 1993 state court petition and argues that the petition shows that First Bank accelerated payments to the date of default -- December 11, 1991. The petition states that "[b]y virtue of Moniteau County's default, [First Bank] has accelerated all payments and the same are now due and payable." Id. Moreover, in the petition's prayer for relief, First Bank requested damages "in the amount of . . . $35,072.16 . . . , plus interest at the highest legal rate from December 10, 1991." Id. at 10-11.

[7]See 28 U.S.C. § 1332 (1994).

court held that (1) First Bank accelerated all payments back to December 10, 1991, the date of default; (2) Hogge's representations were not the proximate cause of First Bank's damages; (3) First Bank had no right to rely on Hogge's representations in the Certificate of Acceptance; and (4) First Bank was unable to present facts which created a triable issue on injury. First Bank appeals.

## II.    DISCUSSION

We review a grant of summary judgment <u>de novo</u>. Summary judgment is appropriate when the evidence, viewed in the light most favorable to First Bank, demonstrates that there is no genuine issue of material fact and that Hogge is entitled to judgment as a matter of law. <u>See</u> <u>United States v. Dico, Inc.</u>, 136 F.3d 572, 578 (8th Cir. 1998). Sitting in diversity, we apply the substantive law of the applicable state, in this case, Missouri. <u>See</u> <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938). We review <u>de novo </u>the district court's application of state law. <u>See</u> <u>First Colony Life Ins. Co. v. Berube</u>, 130 F.3d 827, 829 (8th Cir. 1997). Where state law is ambiguous, we predict how the state's highest court would resolve the issue. <u>See</u> <u>id.</u>

*A.     Acceleration*

On appeal, First Bank contends that the district court erred in finding that First Bank had accelerated all three of the County's lease payments when the County defaulted on the 1991 payment. In particular, First Bank argues that the only evidence of an acceleration was its statements in the state court pleadings and that the district court erred in finding that these statements were binding on First Bank as judicial admissions. First Bank notes that other evidence existed which showed that no acceleration had occurred.[8]

---

[8]For instance, in its Answer in the state court case, the County denied that acceleration occurred. Also, affidavits from First Bank's president and vice-president

Missouri law provides that acceleration clauses are not "self-operative." Spires v. Lawless, 493 S.W.2d 65, 73 (Mo. Ct. App. 1973). Rather, acceleration clauses confer upon the holder an option to treat the entire debt as due upon default. See id. "In order to effectuate the acceleration and render the entire debt due, the [holder] must perform some affirmative, overt act evidencing [its] intention to take advantage of the accelerating provision." Id. The Missouri Supreme Court has held that "[t]he filing of [a claim] seeking full payment is wholly sufficient as notice of acceleration." Audsley v. Allen, 774 S.W.2d 142, 145 (Mo. 1989).

In the present case, First Bank stated in its state court petition that "[b]y virtue of Moniteau County's default, [First Bank] has accelerated all payments and the same are now due and payable." Agreed Statement As The R. On Appeal at 5 (emphasis added). Moreover, in First Bank's prayer for relief, First Bank requested damages "in the amount of . . . $35,072.16 . . . , plus interest at the highest legal rate from December 10, 1991." Id. at 6 (emphasis added). Although these statements from First Bank's abandoned state court pleadings do not constitute binding judicial admissions,[9] these statements are admissible evidence that can be weighed like any other admission against interest of First Bank. See Bledsoe, 429 S.W.2d at 730. Under Missouri law, First Bank's petition which declared that it had accelerated and further demanded full payment under the lease-purchase agreement clearly constitutes a notice of acceleration. See Audsley, 774 S.W.2d at 145. First Bank's subsequent denials by its president and vice-president that no acceleration occurred are wholly inconsistent with First Bank's unambiguous statements claiming an acceleration in its state court pleadings. Therefore, we conclude that no reasonable juror could find that First Bank

---

stated that no acceleration had occurred.

[9]See Bledsoe v. Northside Supply & Dev. Co., 429 S.W.2d 727, 730 (Mo. 1968) ("An admission in an abandoned pleading is not conclusive.") See also Evans v. Eno, 903 S.W.2d 258, 260 (Mo. Ct. App. 1995).

did not accelerate all three payments due under the lease-purchase agreement back to the original date of default on December 10, 1991.[10]

## B.    *Proximate Causation*

Next, First Bank argues that the district court erred in determining that Hogge's misrepresentations were not the proximate cause of First Bank's damages. Rather, First Bank contends that, if Hogge had not misrepresented the County's satisfaction with the equipment, First Bank would not have advanced funds and purchased the lease. Thus, First Bank would not have been in a position to be harmed because First Bank would have owned no rights to payment under the lease as it would not have bought the lease-purchase agreement and would not have lost its original investment in the lease. We disagree.

To state a valid fraudulent misrepresentation claim, First Bank must show the following elements:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that the representation should be acted upon by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of the falsity of the representation, (7) the hearer's reliance on the representation being

---

[10]However, even if we were to assume that by filing its state court petition First Bank only accelerated the final December 10, 1993 payment, the evidence nonetheless reveals that the County still lacked sufficient unencumbered resources at any time between December 10, 1991 and December 30, 1993 to pay the $35,072.16 balance due. See Agreed Statement Of The R. On Appeal at 7-8. Additionally, the record reveals that the County did not have sufficient funds available in 1991 (remaining balance of $7,300.38) or in 1992 (remaining balance of $10,486.87) to make even a single year's payment of $11,690.72. See Agreed Supplemental Statement As The R. On Appeal at Ex. S1.

true, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury.

Midwest Printing, Inc. v. AM Int'l, Inc. 108 F.3d 168, 170 (8th Cir. 1997); see also Clark v. Olson, 726 S.W.2d 718, 719 (Mo. 1987). The failure to establish any element is fatal to the entire fraud claim. See id. Hogge argues that First Bank has failed to establish, at least, two of the nine elements of a fraudulent misrepresentation claim: proximate causation and First Bank's right to rely on Hogge's representations.

Missouri courts have articulated the causation prong of a fraudulent misrepresentation claim, stating that "[f]or false representations to be actionable, there must exist a causal connection between the misrepresentation and the harm allegedly sustained." Stoup v. Robinson, 933 S.W.2d 935, 938 (Mo. Ct. App. 1996) (internal quotation and citation omitted). In addition, proximate causation must be present. That is, "[i]t must appear in an appreciable sense that the damage flowed from the fraud as the proximate and not the remote cause, and the damage must be such as is the natural and probable consequence of the fraud." Heberer v. Shell Oil Co., 744 S.W.2d 441, 443-44 (Mo. 1988) (internal quotation and citations omitted); see also Mackey & Assoc. v. Russell & Axon Int'l Eng'r-Architects, LTD., 819 S.W.2d 49, 50 (Mo. Ct. App. 1991) ("It is not enough that damage follow upon misconduct, but the tort must be the legal cause of the damage. Tortious conduct is a legal cause of damage if it is a substantial factor in the production of the harm.")

The Missouri Court of Appeals's application of the principle of proximate causation in Mackey, 819 S.W.2d at 50, is particularly salient to this appeal. In Mackey, the respondent was an engineering firm which proposed to the plaintiff, an architectural firm, that the two companies collaborate on a bid project in Saudi Arabia. The respondent allegedly represented to the plaintiff that it had a "large staff in Saudi Arabia" and had arrangements with a local firm which made the respondent acceptable to the Saudis. Id. at 49. In reality, the respondent had a total staff of only four persons

in Saudi Arabia. Although the firms prepared and presented all the necessary documents to bid on the desired projects, the firms were not awarded the contracts. The plaintiff alleged that it would not have entered into the agreement with the respondent had it known the true size of the respondent's staff and that the respondent, therefore, should pay for the plaintiff's expenses incurred during the failed arrangement. However, the court found that:

> [t]here is no causal effect between the alleged misrepresentation and losses which plaintiff sustained on the projects. Plaintiff's loss occurred proximately from the failure to obtain the contracts. If the alleged representations had been true the same loss would have been incurred. In that posture plaintiff failed to establish its consequent and proximately caused injury.

Id. at 51.

Similarly, in the present case, any loss suffered by First Bank would have been the same regardless of the condition of the equipment. The lease-purchase agreement was voidable, and voided, pursuant to Article VI, Section 26(a) of the Constitution of the State of Missouri which states that "[n]o county . . . shall become indebted in an amount exceeding in any year the income and revenue provided for such year plus any unencumbered balances from previous years." See also Mercantile Bank of Illinois v. School Dist. Of Osceola, 834 S.W.2d 737, 741 (Mo. 1992) (holding that a lease-agreement is voidable upon a showing that the subdivision of the state entered an agreement to pay more than its "income and revenue provided for such year plus any unencumbered balances from previous years") (internal citation and quotation omitted).

Here, we find that the County did not have sufficient unencumbered resources on December 10, 1991, the date of default, to pay the accelerated amount of

$35,072.16.[11]     See Agreed Statement Of The R. On Appeal at 7-8; Agreed Supplemental Statement As The R. On Appeal at Ex. S1.  Therefore, we conclude that the lease-purchase agreement was voidable under Article VI, Section 26(a) of the Missouri Constitution.  The County further adequately notified First Bank that it had voided the lease-purchase agreement by its letters of August 21, 1992 and November 6, 1992 which cited  Mercantile Bank, 834 S.W.2d at 737, and the County's belief that the agreement was unenforceable under this decision.  Consequently, the County's voiding of the lease-purchase agreement pursuant to Article VI, Section 26(a), rather than Hogge's misrepresentations in the Certificate of Acceptance, was the proximate cause of any injury to First Bank.  See Mackey, 819 S.W.2d at 50.  That is, even if Hogge's representations that the equipment was properly functioning were true, First Bank still would have incurred the same loss based on the County's lack of sufficient unencumbered funds to pay the debt.  See id. at 51.

## C.     Reliance Issue

As an alternative ground, we find that First Bank's fraudulent misrepresentation claim also fails because First Bank had no right to rely on Hogge's statements in the Certificate of Acceptance regarding the condition of the equipment.  The lease-purchase agreement stated that the lessor made no warranties regarding the condition, quality, or fitness of the equipment.  See Agreed Statement As The R. On Appeal at Ex. 1, page 2.  The practical effect of this clause denied the County, as a defense to non-payment on the lease, the claim that the equipment was not performing properly.  Consequently, regardless of the condition of the equipment, First Bank possessed the same rights to payment under the lease-purchase agreement.  The County could not validly refuse payment in the event that the equipment did not work.  As such, we conclude that this provision in the lease-purchase agreement made First Bank's reliance

_____

[11]See also n.10 supra discussing variations in the timing of First Bank's acceleration and the status of the County's unencumbered funds for 1991-1993.

on Hogge's statements regarding the equipment's condition misplaced.  See Empire Gas Corp. v. Small's LP Gas Co., 637 S.W.2d 239,  244 (Mo. Ct. App. 1982) ("In legal effect, [this provision] amounted to a contractual agreement that [Buyer] was not to rely on the representations made by [Seller].")  As "[r]eliance upon representations is an essential element in an action for fraud," First Bank's fraudulent misrepresentation claim must fail.  Id. at 243.

*D.     Proximate Injury*

As a related point to its proximate causation argument, First Bank submits that it clearly was damaged by Hogge's representations and that the appropriate measure of damages is a question for the jury.  Under Missouri law, a plaintiff is generally entitled to damages equal to the difference between what it actually received and what it would have received had no fraud occurred.  See Kerr v. First Commodity Corp. of Boston, 735 F.2d 281, 285 (8th Cir. 1984).

Here, First Bank has suffered no injury because First Bank's right to receive payment was unaffected by the truth or falsity of Hogge's representation.  Thus, even if First Bank did rightfully rely on this representation, First Bank was not injured because it had a right to proceed against the County under the lease-purchase agreement regardless of whether the equipment worked.  As we noted above,[12] the County's constitutional defense pursuant to Article VI, Section 26(a) was the proximate cause of any harm First Bank may have suffered.

## III.   CONCLUSION

In conclusion, we find that (1) First Bank accelerated all payments back to December 10, 1991, the date of default; (2) Hogge's representations were not the

---

[12]See Section II.B. of this Opinion discussing proximate causation.

proximate cause of First Bank's damages; (3) First Bank had no right to rely on Hogge's representations in the Certificate of Acceptance; and (4) First Bank was unable to present facts which created a triable issue on injury. For the reasons stated, we affirm the judgment of the district court which granted summary judgment to Hogge on First Bank's fraudulent misrepresentation claim.

AFFIRMED.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.