# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 03-2956/3107

_____

| | | |
|---|---|---|
| Barbara Wigg, | * | |
| | * | |
| Appellee/Cross-Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Sioux Falls School District 49-5; | * | |
| Dr. Jack Keegan, in his individual | * | |
| and official capacity as Superintendent | * | |
| of the Sioux Falls School District, | * | |
| | * | |
| Appellant/Cross-Appellee, | * | |
| | * | Appeals from the United States |
| _____ | * | District Court for the |
| | * | District of South Dakota. |
| National School Boards Association; | * | |
| American Association of School | * | |
| Administrators; Associated School | * | |
| Boards of South Dakota; Iowa | * | |
| Association of School Boards; | * | |
| Minnesota School Boards Association, | * | |
| | | |
| Amici on Behalf of | * | |
| Appellant/Cross-Appellee, | * | |
| | * | |
| The National Legal Foundation; | * | |
| Christian Educators Association | * | |
| International, | * | |
| | * | |
| Amici on Behalf of | * | |
| Appellee/Cross-Appellant. | * | |

Submitted: June 14, 2004
Filed:  September 3, 2004

Before SMITH, BEAM, and COLLOTON, Circuit Judges.

SMITH, Circuit Judge.

Elementary teacher Barbara Wigg sued Sioux Falls School District 49-5 and Superintendent Dr. John Keegan (collectively referred to as "SFSD") to challenge SFSD's decision prohibiting her from participating in a Christian-based after-school program at schools in the school district. Wigg sought a preliminary injunction, a permanent injunction, declaratory relief, and damages claiming that SFSD's policy violated her First Amendment free speech rights. SFSD defended its decision on grounds that Wigg's participation would subject SFSD to First Amendment Establishment Clause liability. Initially, the district court denied the temporary-injunction motion; however, the court later granted Wigg a permanent injunction after concluding that Wigg could participate in the after-school program at schools in the district–other than the one in which she taught–without raising Establishment Clause concerns for SFSD. The district court also ruled that SFSD's Establishment Clause concerns allowed it to prohibit Wigg's participation in the after-school program at her present school. Both parties appeal. We affirm in part and reverse in part.

I. *Background*

Wigg, currently a second- and third-grade teacher at Laura B. Anderson Elementary School ("Anderson Elementary"), has worked in the school district at five different elementary schools since 1988. The staff at Anderson Elementary maintains regular hours each school day from 7:30 a.m. to 3:30 p.m. Some teachers, including Wigg, often arrive earlier than 7:30 a.m. and stay later than 3:30 p.m. Throughout her

employment, Wigg has been active with children after school hours. For example, she has participated in after-school Girl Scouts and has taught private guitar and reading lessons.

The Good News Club ("the Club") is an after-school organization sponsored by Child Evangelism Fellowship. To participate in the Club, a child must provide a signed permission slip from a parent. According to the Club's literature, its purpose is to "evangelize boys and girls with the Gospel of the Lord Jesus Christ and establish (disciple) them in the Word of God and in the local church for Christian living."

SFSD maintains two pertinent policy provisions. First, SFSD follows a "Community Use of School Facilities" Policy (Use Policy) that allows both school-sponsored and student-initiated groups, as well as community organizations such as churches, non-profit organizations, and non-sectarian youth groups, to use its facilities. The purpose of the Use Policy is to foster community involvement. SFSD requires only that applicants verify that they are non-profit organizations and that they have liability insurance. Second, SFSD maintains a "Religion in the Schools and at School Activities" Policy (Religion Policy) that prohibits all SFSD personnel from participating in religious activities on school grounds or at school-sponsored activities. The prohibition, however, does not apply when the organization has leased the facility according to the lease provision in the Use Policy. SFSD interprets this lease provision to apply only to temporary leases to a church seeking a permanent location.

In October 2002, the Club requested access to SFSD's facilities to hold its meetings. SFSD granted the request, and the Club currently meets at five elementary schools within SFSD, including Anderson Elementary. The Club meets at Anderson Elementary from 3:00 p.m. to 4:00 p.m. at the end of the school day. Wigg attended the Club's first meeting in Anderson Elementary's library on December 15, 2002. Nine students attended that meeting, including some from Wigg's combined second-

and third-grade class. At the meeting, the students played a game, learned a Bible verse, and heard a Christian story.

After the meeting, a staff member questioned whether Wigg could teach religion in the building. Noting staff use of the library at the end of the workday, the staff member expressed her concern to Anderson Elementary Principal Mary Peterson over Wigg teaching the Club in the library. Subsequently, Peterson informed Wigg that she could not participate in the Club meetings (which were held on school grounds) because of SFSD's concern that her participation in the organization might be perceived as an establishment of religion. Since that time, Wigg has not participated in the Club's meetings in any school within the district.

Following her exchange with Peterson, Wigg sent a letter to Dr. Keegan asking for permission to participate in the Club. She informed Dr. Keegan that the Club requires every participating student to obtain a parental permission slip. The letter also suggested language for a disclaimer that would explain that any school district employees participating in the Club were acting as private citizens and did not represent SFSD in any manner. On January 17, 2003, SFSD affirmed its decision not to permit Wigg to participate because the school feared that allowing Wigg to participate in the Club would present Establishment Clause issues for SFSD.

Wigg sent a second letter to SFSD on January 28, 2003, again asking that SFSD allow her to participate in the Club's meetings. She based her request on SFSD's Religion Policy. She claimed in the letter that SFSD should allow her to participate in the meetings if the Club leased its facilities in accordance with the Use Policy. SFSD again denied Wigg's request and explained that the Religion Policy addressed situations in which SFSD allowed a church to lease space in the event that the church was without–and in the process of constructing or finding–its own facilities. SFSD noted that it included the provision in the Religion Policy to allow SFSD personnel to attend church services if their church leased facilities from SFSD.

SFSD reaffirmed its position that Wigg would violate the Religion Policy if she participated in the Club's meetings.

Wigg filed her complaint on February 20, 2003, alleging that SFSD's Religion Policy violated her constitutional rights. The district court denied Wigg's request for a preliminary injunction, and SFSD then filed a motion for summary judgment on Wigg's motion for permanent injunction and declaratory judgment. SFSD later filed motions to strike a demand for jury trial and to strike Wigg's errata sheet.

On July 2, 2003, the district court issued its decision granting in part and denying in part SFSD's motion for summary judgment as well as Wigg's claims for permanent injunction and declaratory relief. The district court concluded that while SFSD could constitutionally prohibit Wigg from participating in the Club at Anderson Elementary, SFSD's prohibition against Wigg's participation in the Club at other schools was unconstitutional. The district court granted SFSD's motions to strike Wigg's demand for a jury trial and Wigg's errata sheet. The district court denied SFSD's motion to stay the permanent injunction on August 22, 2003.

SFSD timely appealed, arguing that while the district court correctly held that SFSD could prohibit Wigg from participating in the Club at Anderson Elementary, it erred in permanently enjoining SFSD from enforcing its policy prohibiting Wigg from actively participating in the Club at other schools within the district. Wigg timely cross-appealed, arguing that the district court correctly determined that Wigg could participate in the Club at other schools within the district, but erred in ruling that SFSD could prevent Wigg from participating in the Club at Anderson Elementary.[1]

---

[1] Wigg raised two additional issues in her cross-appeal regarding the district court's striking her errata sheet and her claim for compensatory damages. SFSD also claims in its appeal that it is immune from damages under South Dakota law. At oral argument, Wigg's attorney notified the court that Wigg has abandoned these claims

## II. *Analysis*

Both Wigg and SFSD argue that the district court erred in deciding the substantive First Amendment issues in this case. The arguments highlight the considerable tension among the clauses of the First Amendment–particularly when an issue arises in a public school setting. Does a school's concern for avoiding accusations of establishment of religion justify inhibiting the free speech and association rights of employees after work hours when the relevant activity takes place on school property? In this case, we do not believe so.

We review a grant of summary judgment de novo and apply the same standard used by the district court. *Callas Enterprises, Inc. v. Travelers Indem. Co. of America*, 193 F.3d 952, 955 (8th Cir. 1999); *First Bank of Marietta v. Hogge*, 161 F.3d 506, 509 (8th Cir. 1998). Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. *Id.*

We review a district court's issuance of a permanent injunction for an abuse of discretion. *Randolph v. Rodgers*, 170 F.3d 850, 856 (8th Cir. 1999). An abuse of discretion occurs if the district court reaches its conclusion by applying erroneous legal principles or relying on clearly erroneous factual findings. *Id*. (citing *Fogie v. THORN Americas, Inc.*, 95 F.3d 645, 649 (8th Cir. 1996)). Where the district court improvidently grants or denies a motion for summary judgment, the district court's issuance of an injunction based on the summary judgment ruling is clearly erroneous. *Id*. at 859.

---

on appeal. Therefore, we will not address Wigg's additional claims. In addition, because Wigg abandoned her compensatory damages claim and her nominal damages award totaled less that twenty dollars, SFSD's claim of sovereign immunity also must fail pursuant to *In re Young*, 209 U.S. 123 (1908) and its progeny.

SFSD urges us to conclude that its Religion Policy prohibiting Wigg's or any SFSD employee's participation in any religious-based organization having access to SFSD property is justified by SFSD's Establishment Clause concerns.[2] The posture of this case suggests that we must answer whether the government's compelling interest in avoiding an Establishment Clause violation would justify viewpoint discrimination in a school setting. To date, the Supreme Court has rejected Establishment Clause defenses in at least two free speech cases, *Widmar v. Vincent*, 454 U.S. 263 (1981), and *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993). However, we, like the Court in *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001), save this question for another day because we conclude that, on these facts, SFSD has no valid Establishment Clause interest that justifies its restriction of its employees' private speech. 533 U.S. at 112–113 (noting that while Establishment Clause concerns may justify content-based discrimination, it is unclear whether they would justify viewpoint-based discrimination).

The First Amendment to the Federal Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech . . . ." The Fourteenth Amendment imposes those substantive limitations on the legislative power of the States and their

---

[2] We note that this case does not involve whether the Club may meet after hours at the school. The United States Supreme Court in *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001), established that when a public school system permits after-hours access to its facilities by one non-school related group, it cannot refuse access to another based on its religious nature, as that constitutes viewpoint discrimination in violation of the Establishment Clause. Just as in *Milford*, here the district court determined that SFSD's schools were limited public forums, thus allowing SFSD to place some limitations on the types of organizations that can access the facilities. However, *Milford* indicates that just as a school cannot endorse a religious-based program, it also cannot discriminate against one if the program qualifies as one permitted access pursuant to the school's access policy. SFSD agrees that the Club qualifies for access.

political subdivisions. *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 301 (2000) (citations omitted).

With few exceptions, the First Amendment prohibits governments from infringing free speech rights in public forums.[3] *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). The government has more discretion when the speech forum established by the government is considered limited. Then, the government is not required to allow persons to engage in every type of speech. The government may reserve the forum for certain groups or discussion of certain topics, but it must "abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). A viewpoint-discriminatory regulation is presumed to be unconstitutional. *Id.* at 828–829.

"The principle that government may accommodate the free exercise of religion does not supersede the fundamental limitations imposed by the Establishment Clause. It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" *Lee v. Weisman*, 505 U.S. 577, 587 (1992) (quoting *Lynch v. Donnelly*, 465 U.S. 668, 678 (1984)). However, "there is a crucial difference between government speech endorsing religion, which the Establishment Clause forbids, and private speech endorsing religion, which the Free Speech and Free Exercise Clauses protect." *Bd. of Ed. of Westside Cmty. Sch. (Dist.66) v. Mergens*, 496 U.S. 226, 250 (1990) (opinion of O'Connor, J.). Of utmost importance in Establishment Clause inquiries

---

[3] Traditional public forums include parks, streets, and sidewalks, which "have immemorially been held in trust for the use of the public" and have been used "time out of mind" for "purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Perry Educ. Ass'n*, 460 U.S. at 45 (citation omitted).

is whether the government regulation is neutral towards religion. *Rosenberger*, 515 U.S. at 839. The "guarantee of neutrality is respected, not offended, when the government, following neutral criteria and evenhanded policies, extends benefits to recipients whose ideologies and viewpoints, including religious ones, are broad and diverse." *Id.*

SFSD argues that permitting its employees to participate in religious-based programs held on school grounds would violate Establishment Clause principles because it would appear that SFSD endorses a particular religion or religious activity. However, SFSD's policy of prohibiting all employees–even on their own time–from participating in any religious-based programs held on school grounds is an overly-broad remedy. In an effort to avoid an establishment of religion, SFSD unnecessarily limits the ability of its employees to engage in private religious speech on their own time. Although SFSD allows access to the Club, SFSD impermissibly discriminates by limiting those who can attend based upon the subject matter of the speech. As such, SFSD's Religion Policy preventing SFSD employees from participating in religious-based activities is viewpoint discriminatory and, thus, per se unconstitutional. *Rosenberger*, 515 U.S. at 828–829.

In support of its policy limiting SFSD employees from participating in religious-based programs, SFSD argues that its Establishment Clause concern constitutes a compelling reason to justify the restriction. However, Wigg asserts that the Establishment Clause is not implicated because her participation constitutes private or free speech outside the sphere of her employment and without the imprimatur of SFSD. According to Wigg, "[s]he only wants access to the District facilities after school, on her own time to participate in a religious meeting, just like she and other employees may assemble for private secular meetings."

We recently decided *Doe v. The Sch. Dist. of the City of Norfolk*, 340 F.3d 605 (8th Cir. 2003), dealing with Establishment Clause concerns in relation to a private

-9-

speech issue. In *Doe*, a public high school student and parent filed a § 1983 Establishment Clause lawsuit against a school district, its superintendent, and a school board member because the school board member, who was also a parent of a graduating student, recited a prayer at the school-sponsored graduation despite specific instructions prohibiting prayer at the ceremony. We found no Establishment Clause violation after determining that the school board member was acting as a private citizen when he recited the prayer although he gained access to the podium due in part to his position on the school board. We particularly observed that the parent's prayer was not state-sponsored and did not bear the "imprint of the state"–although it occurred at a school-sponsored event–because he was not acting in a representative capacity at that moment. *Id*. at 611 (citing *Santa Fe Indep. Sch. Dist.*, 530 U.S. at 305). We noted that the Supreme Court in *Santa Fe*, which prohibited student-led prayer prior to school-sponsored sporting events, provided a relevant inquiry asking "'whether an objective observer, acquainted with the text, legislative history, and implementation of the statute, would perceive it as a state endorsement of prayer in public schools.'" *Doe*, 340 F.3d at 612 (quoting *Santa Fe Indep. Sch. Dist.*, 530 U.S. at 308 (internal citations omitted)). The Court in *Santa Fe* determined that an objective observer would perceive that the school sanctioned the pre-game prayer. Utilizing this inquiry, we reached a contrary conclusion in *Doe*, noting that the school specifically advised all graduation participants, including the school-board-member parent, that prayer was not permitted during the ceremony and that the parent's comments were clearly only his own.

With the guidance of *Doe* and *Santa Fe*, we conclude that Wigg's participation in the after-school Club constitutes private speech. Wigg's private speech does not put SFSD at risk of violating the Establishment Clause: Wigg's speech did not occur during a school-sponsored event;[4] she did not affiliate her views with SFSD (Wigg's

---

[4] Merely allowing an organization access to school property does not render the meeting a state- or school-sponsored event. In *Lamb's Chapel*, for example, the

counsel proposed a disclaimer explaining that any school district employees participating in the Club were acting as private citizens and did not represent SFSD in any manner); students participated in the meetings with parental consent; and nonparticipating students–unless supervised–exited the building before the meetings began. Under the inquiry provided in *Santa Fe*, no reasonable observer would perceive Wigg's private speech as a state endorsement of religion by SFSD. SFSD's desire to avoid the appearance of endorsing religion does not transform Wigg's private religious speech into a state action in violation of the Establishment Clause.[5] Even private speech occurring at school-related functions is constitutionally protected, *Chandler v. Siegelman*, 230 F.3d 1313, 1317 (11th Cir. 2000); therefore

Supreme Court determined that Establishment Clause concerns did not arise in allowing a group access after school hours to show a religious-themed movie. The Court noted that because the property had been used by a wide variety of private organizations, "there would have been no realistic danger that the community would think that the District was endorsing religion or any particular creed, and any benefit to religion or the Church would have been no more than incidental." *Lamb's Chapel*, 508 U.S. at 394; *see also Widmar*, 454 U.S. 263 (1981) (Establishment Clause not violated by allowing religious clubs access to state university property for meetings). Such is the case here in that merely allowing the Club to use SFSD property would not rise to state sponsorship of the event.

[5] SFSD urges us to apply the balancing test laid out in *Pickering v. Bd. of Educ. of Will County, Illinois*, 391 U.S. 563 (1968), to uphold its restriction, as an employer, over Wigg, as an employee. The *Pickering* line of cases recognizes that the government employer has a "freer hand in regulating the speech of its employees than it has in regulating the speech of the public at large." *Waters v. Churchill,* 511 U.S. 661, 671 (1994). *Pickering* also recognizes a public employee's right to speak on matters that lie at the core of the First Amendment, that is, matters of public concern, so long as the speech does not interfere with "the effective functioning of the public employer's enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987). While we acknowledge *Pickering's* importance in work-place matters, we note that our holding here does not implicate *Pickering*. The facts of this case do not show a connection between Wigg's private speech and the functioning of the school.

private speech occurring at non-school functions held on school grounds must necessarily be afforded those same protections.

While we are aware that school districts like SFSD must tread carefully in a constitutional mine field of Establishment Clause, Free Speech Clause and Free Exercise Clause concerns, we reiterate that Establishment Clause cases stress the government's neutrality towards religion. *Milford*, 533 U.S. at 114 (citing *Rosenberger*, 515 U.S. at 839). Wigg seeks nothing more than to be treated like other private citizens who are allowed access to Club meetings. SFSD's policy permitting participation by all interested parties–so long as they are not district employees–in after-school, religious-based, non-school related activities violates that mandate of neutrality. As such, we affirm the district court's order allowing Wigg to participate in the Club at other SFSD school locations, but we reverse the court's decision prohibiting Wigg from participating at Anderson Elementary.

COLLOTON, Circuit Judge, concurring.

I concur in the opinion of the court, except for footnote 1. Ms. Wigg has abandoned her claims on appeal that the district court erred by striking her errata sheet and striking her claim for nominal damages. Therefore, I believe there is no reason to consider SFSD's argument relating to immunity from damages under the Eleventh Amendment, and I would express no view on whether SFSD is entitled to such immunity, *compare Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 280-81 (1977) (Based on consideration of Ohio law, Ohio school district not immune from suit under Eleventh Amendment) *with Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir. 1992) (California school district immune from suit under Eleventh Amendment), or whether the Eleventh Amendment bars an award of nominal damages. *See Hopkins v. Saunders*, 199 F.3d 968, 976-78 (8th Cir. 1999) (nominal damages award of $1.00 foreclosed by Eleventh Amendment immunity and qualified immunity).